UNITED STATES of America,
Plaintiff-Appellee,

v.

Eventius T. BURTON,
Defendant-Appellant.

No. 83–2579.

United States Court of Appeals,
Fifth Circuit.

July 11, 1984.

See also 575 F.Supp. 1320.

David Flynn, Beaumont, Tex., Scott McLarty, Larry E. Blount, Athens, Ga., for defendant-appellant.

Robert J. Wortham, U.S. Atty., J. Michael Bradford, Asst. U.S. Atty., Beaumont, Tex., for plaintiff-appellee.

Before GARZA, GARWOOD and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Eventius Burton appeals his conviction by a jury on two counts of failing to file income tax returns and four counts of filing false withholding forms, contrary to 26 U.S.C. §§ 7203,[1] 7205.[2] Burton argues that the district court effectively withheld the essential element of willfulness from the jury by instructing them that his alleged good faith belief that wages were not taxable income was not a defense.[3] Burton

also argues that the district judge should have allowed a defense expert to testify concerning the legal uncertainty over whether wages are income. Finally, Burton charges error in the judge's appointment of a jury foreman. We are persuaded that the instruction regarding Burton's good faith was incorrect but that the court did not err in excluding the opinion of the expert regarding the law or in selecting a jury foreman. We reverse and remand for a new trial.

I

Evidence at trial established that Burton failed to file required income tax returns and filed withholding forms stating that he was exempt from paying taxes. Burton testified to his good faith belief that wages were not income, and proffered evidence that at relevant times he did not know that the law defined wages as income and consequently did not have the requisite intent to violate the law. Of course if he had no income Burton had no obligation to file a return and his statements to his employers that he was exempt would have been true.

Over Burton's objection the district court instructed the jury that:

> The court has ruled as a matter of law that a good faith belief that wages are not income is not a defense to the charges in this case.

Later he instructed the jury that:

> The test for willfulness under these counts is whether the Defendant intentionally failed to file tax returns under the charged years when he knew the law required him to do so.

Finally, when the government objected to Burton's attorney referring in his closing

---

1. Section 7203 provides in pertinent part:

   Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return ... who willfully fails to pay such estimated tax or tax, [or] make such return ... shall ... be guilty of a misdemeanor ....

2. Section 7205 provides in pertinent part:

   Any individual required to supply information to his employer under section 3402 who willfully supplies false or fraudulent information ... shall ... upon conviction thereof, be fined not more than $500, or imprisoned not more than 1 year, or both.

3. In addition, Burton argues that his trial counsel rendered ineffective assistance, an issue it is not necessary to address.

argument to Burton's state of mind, the district court again stated:

> The Court has instructed the Jury that [a] good faith belief that wages are not income is not a defense in this case. Go ahead.

## II

██ Both the failure to file and false filing offenses require that an accused have acted "willfully," that is, intentionally in violation of a known legal duty. *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976). This "implements the pervasive intent of Congress to construct penalties that separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers." *United States v. Bishop*, 412 U.S. 346, 361, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973). Similarly, "Congress did not intend that a person by reason of a bona fide misunderstanding as to his liability for the tax ... should become a criminal by his mere failure to measure up to the prescribed standard of conduct." *United States v. Murdock*, 290 U.S. 389, 396, 54 S.Ct. 223, 226, 78 L.Ed. 381 (1933). *See also United States v. Garber*, 607 F.2d 92, 97–98 (5th Cir.1979) (*en banc*).

██ A bona fide misunderstanding of the tax laws can negate the essential element of willfulness and in this sense is a "defense." There is no question but that the district court's instructions took Burton's alleged bona fide misunderstanding of the taxability of wages out of the definition of willfulness. Nor is there any dispute but that such instructions would ordinarily be error, as a supplanting of the jury's role as fact finder with respect to defendant's state of mind. But the government argues that such a claim of subjective innocence must be "objectively reasonable." In short, the government urges us to conclude that it is the judge who first decides whether a defendant's claim is sufficiently credible to be considered by the jury. Persuaded that a limit of objective reasonableness improperly diminishes the jury's role, we reject the argument.

██ Beyond dispute, wages are income. *Lonsdale v. Commissioner*, 661 F.2d 71 (5th Cir.1981). Equally so, a defendant's specific intent is an essential element of the crimes alleged. *See, e.g., United States v. Pomponio*, 429 U.S. at 12, 97 S.Ct. at 23. Yet, as far-fetched as it may be, Burton's claim that he did not know that the tax laws included wages in taxable income was for the jury because the government is never entitled to a directed verdict in a criminal jury trial. *United States v. Johnson*, 718 F.2d 1317 (5th Cir. 1983) (*en banc*).

We have previously allowed the jury to decide whether the taxpayer held a good faith belief that wages were not taxable income. *United States v. Herzog*, 632 F.2d 469, 473 (5th Cir.1980). Courts have also allowed the jury to decide the defendant's credibility when he claims he believed that to be taxable dollars must be paid in gold. *See United States v. Ware*, 608 F.2d 400 (10th Cir.1979). Similarly, we have vacated bench convictions where the defendant had a good faith, although indisputably wrong, belief that he was not required to file quarterly business returns if he didn't have the money to pay the tax owed. *United States v. Pinner*, 561 F.2d 1203 (5th Cir.1977). In the context of whether the defendant willfully violated the tax laws because he did not think his conduct would result in an understatement of income, we held that it was plain error for the trial court to invite the jury to consider what other people similarly situated would have reasonably realized. *Mann v. United States*, 319 F.2d 404, 409 (5th Cir.1963), *cert. denied*, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964). We explained:

> The crime of income tax evasion must be accompanied by a specific intent on the part of the accused to defeat or evade the tax, which must be proved by independent evidence. *Spies v. United States*, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). Under the instruction here involved, the jury is invited to speculate as to what any other person similarly situated to Dr. Mann and with his

knowledge, would reasonably have expected to be the consequences of the conduct under consideration as shown by the evidence. The test is whether Dr. Mann *himself* willfully attempted to evade or defeat the tax.

*Id.* (emphasis added). *See also Gaunt v. United States,* 184 F.2d 284, 291 (1st Cir. 1950), *cert. denied,* 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662 (1951), approving a jury instruction providing that even gross negligence could not defeat a good faith claim.

The government, seeking support for its "objectively reasonable" limitation on good faith misunderstandings of the law defenses, relies on decisions holding that it is not a defense to a willful violation of the Revenue Code for the defendant to act out of disagreement with the law or out of a belief that the law is unconstitutional. *See, e.g., United States v. Douglass,* 476 F.2d 260, 264 (5th Cir.1973); *United States v. Quilty,* 541 F.2d 172, 175 (7th Cir.1976); *United States v. Kelley,* 539 F.2d 1199, 1204 (9th Cir.), *cert. denied,* 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976). It is immediately apparent that the premise of these decisions is that in each case the defendant *knew* of the tax law and was not uncertain about the duty Congress meant to impose.

■ Those who refuse to pay taxes as a protest against governmental policies are not asserting any misapprehension of the duty imposed by the statute; their violation of the statutory command is thus willful, and they must suffer the penalties attending their act of civil disobedience. *United States v. Smith,* 618 F.2d 280, 282 (5th Cir.), *cert. denied,* 449 U.S. 868, 101 S.Ct. 203, 66 L.Ed.2d 87 (1980). Those who believe, even in good faith, that the income tax law is unconstitutional are similarly willful violators of the tax law if they understand the obligations the statute purports to impose upon them. *United States v. McCarty,* 665 F.2d 596, 597 (5th Cir.), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1287 (1982). One who believes a statute to be unconstitutional is entitled

to challenge it in court, *see* 26 U.S.C. § 7422, but disobeys it only at the risk of criminal penalties should the constitutionality of the statute be upheld.[4] The defendant's good faith belief that the statute is unconstitutional does not negate the willfulness of his defiance of the statute, and such a defendant is not entitled to a jury instruction that his belief in the statute's unconstitutionality shields him from liability for willful violation of the statute. *United States v. McCarty,* 665 F.2d at 597; *United States v. Erickson,* 676 F.2d 408, 411 (10th Cir.), *cert. denied,* 459 U.S. 853, 103 U.S. 118, 74 L.Ed.2d 103 (1982). *Hayward v. Day,* 619 F.2d 716, 717 (8th Cir.), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980).

Thus, we agree with the government that there is a difference between willful defiance of a statute and ignorance of a statute's existence or meaning. These distinctions, while arbitrary at their edges, distinguish citizens who simply choose not to obey a known duty from those who act out of ignorance or misunderstanding. Although the jury must, in any event, determine whether the defendant willfully violated the statute, these distinctions will control whether or not the defendant's good faith beliefs will provide a defense to the criminal charge as to which the jury should be instructed. Thus, when this issue is raised by the evidence, the jury can be told that in deciding whether the government has met its burden of proving that the defendant acted willfully, they may draw the inference that the defendant was aware of his legal obligation from acts taken in protest or to express a political view, even though made with conviction and sincerity of purpose. Such inquiries into a defendant's state of mind, while not a quest for a quantifiable and neatly measurable existence, are standard fare for juries. They are the essence of "black box" decisions.

There is a temptation for judges to decide that a defendant's claim is too incredi-

---

4. Of course, no penalty may be imposed if the statute is determined to be unconstitutional.

ble. This temptation is reinforced by concern that a defendant is being allowed to escape the reach of settled legal rules by erroneous arguments to a jury in an abuse of the roles of counsel and the court. Moreover, there may be concern that such objective limitations by the judge are necessary to prevent confusing "proofs" of law as an evidentiary fact. Each such concern is understandable but unfounded. The quick answer is that, apart from constitutional strictures explained in *United States v. Johnson,* such limitations upon defendants serve no practical purpose, for they will not materially affect the nature of the trial evidence or the trial. A jury is the ultimate discipline to a silly argument. Here the district court was understandably frustrated by the implausibility of Burton's contention, but he ought not have taken the question from the jury.

Nor do *United States v. Moore,* 627 F.2d 830, 833 (7th Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981), and *United States v. Ware,* 608 F.2d at 405, give much comfort to the government. In both cases the defendants claimed that they believed Federal Reserve Notes were not income. In *Ware* the trial judge specifically instructed that a good faith misunderstanding of the law did constitute a defense. 608 F.2d at 705. By contrast, the jury here was not left to conclude that it could find Burton innocent if it reasonably doubted that he was truly aware that wages were taxable. The *Moore* court did in dicta suggest that a good faith mistake must be objectively reasonable. 627 F.2d at 833. But *Moore*'s alleged good faith belief stemmed not from a misunderstanding of the tax laws but from the belief that the income tax and Federal Reserve Notes were unconstitutional. *Id.* at 833. Regardless, this circuit has not adopted a rule that a defendant's claim of ignorance or good faith belief must be objectively reasonable and we decline to do so here.

## III

Because the trial court may face the same issue on remand, we reach Burton's argument that the district court erroneously excluded the expert testimony of a tax professor to the effect that, despite its lack of legal acceptance, Burton's theory and belief that wages are not taxable income was not implausible. We find no error.

■ Though the credibility of a defendant's assertion that he was ignorant of the tax requirement must be left to the jury, it does not necessarily follow that evidence regarding the uncertainty of the controlling law is, a fortiori, sufficiently probative to overcome its potential for prejudice and confusion. Though evidence that others shared a misunderstanding of the law may be relevant to the credibility of a defendant's claim that he had a particular belief, under Fed.R.Evid. 403, a trial judge's analysis of admissibility only begins with the decision that proffered evidence is relevant. He must yet weigh its marginal contribution against potential prejudice and confusion, keeping in mind that the judge remains the jury's source of information regarding the law. The Rule 403 balance, when struck by the district court in the first instance, will not be overturned on appeal absent an abuse of discretion. *Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1153 (5th Cir.1981).

■ Testimony such as that offered by Burton's "expert" is not admissible as an explication of plausible readings of the statutory language; erroneous legal views which may have been held by the defendant can be described by the trial judge in his instruction on willfulness and good faith, keeping in mind that it is the defendant's state of mind at the time of the accused conduct which is at issue. As noted, a defendant could offer competent evidence that his view was not unique but was shared by others; this evidence might take the form of surveys. While indistinguishable in logical relevance from the opinions of the professor which we find excludable, its weight in the Rule 403 balance, including its reduced potential for confusion and protracted evidentiary side trips, might well lead a district court to admit it.

Nor is our decision in *United States v. Garber*, 607 F.2d 92 (5th Cir.1979) (*en banc*), to the contrary. We there reversed Garber's conviction for tax fraud stemming from her failure to report income from the sale of her blood, resting the reversal in part on the trial judge's refusal to admit testimony regarding the unsettled state of the law. *Id.* at 97. However, we did so in response to a decision by the trial court that the prior uncertainty of the legal question was not relevant to the jury's decision. While the legal decision of taxability was for the judge, the uncertainty and doubt which had previously existed were yet relevant to the defendant's state of mind.

In holding in *Garber* that the trial court erred in not admitting the testimony of an accountant regarding the uncertainty of whether the sales proceeds were taxable income, we declared that Garber need not have been aware of this uncertainty in the law. 607 F.2d at 98. We noted that the question of Garber's specific intent was crucial and that in such cases we ought to allow a defendant wide latitude to develop her defense. 607 F.2d at 99. Though we concluded that the excluded testimony by the accountant would be relevant to the credibility of Garber's alleged belief, 607 F.2d at 99, we did not analyze the question within the context of Rule 403's balancing exercise. Given the unique, indeed near bizarre, facts, we recoiled at the use of criminal prosecution to "pioneer" the tax law. 607 F.2d at 100. Critically, the level of uncertainty was so high we did not require a connection between the legal uncertainty and Garber's claim. Awareness of legal debate thus was virtually presumed; however, we did not hold that in the absence of such a level of uncertainty—approaching legal vagueness—that we could not require a defendant to link his own belief to the evidence of legal uncertainty.

We are persuaded that, apart from those few cases where the legal duty pointed to is so uncertain as to approach the level of vagueness, the abstract question of legal uncertainty of which a defendant was unaware is of marginal relevance. In short, we read *Garber* no more broadly than its facts in deciding that in other cases the judge will ordinarily be the sole source of the law. Evidence of legal uncertainty, except as it relates to defendant's effort to show the source of his state of mind, need not be received, at least where, as here, the claimed uncertainty does not approach vagueness and is neither widely recognized nor related to a novel or unusual application of the law. It is significant that Burton did not in his proffer suggest that he relied upon the expressed views of the tax professor in not paying his taxes or in inadequately completing the required tax forms.

## IV

■ Burton also argues that it was reversible error for the district judge to appoint the jury foreman. No prejudice from this appointment has been shown. No objection was made to this procedure and we do not find plain error. Fed.R.Crim.P. 52(b). At the same time, the practice does give considerable pause. While efficiency may be served, there are identifiable contrary concerns.

A federal trial judge is at the heart of the federal judicial system, and is a potent figure. Juries are understandably sensitive to any perceived cue from the bench, and selection by the judge of a foreperson arguably clothes the foreperson with some particular authority. We can only guess how that circumstance may affect the dynamics of deliberation, but we are comfortable in concluding that there are effects.

Moreover, there is a potential for unwanted and unintended appearances. The practice of judges selecting grand jury forepersons has been a source of litigation. *See Guice v. Fortenberry*, 661 F.2d 496, 499 (5th Cir.1981) (en banc). Such litigation need never arise with respect to petit juries if the jurors are permitted to select their own forepersons.

In short, we surface our concern for such value as it may have to the judges charged with making the decision in the first in-

stance. While we are not prepared to strike down the practice, as prejudicial error or as a matter of superintendence, for now we are not persuaded that the utility of the practice outweighs its potential for prejudice; it ought then to be judiciously engaged in, if not abandoned for lack of demonstrated worth.

REVERSED and REMANDED.