THOMAS A. TWEEDDALE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 45126-85.        Filed March 22, 1989.

*Ronald A. Stein,* for the petitioner.
*Matthew A. Lykken,* for the respondent.

PARR, *Judge:* Respondent determined a deficiency of $28,483.50 against petitioner in 1983, and additions to tax as follows:

| Sec. 6653(a)(1) [1] | Sec. 6653(a)(2) | Sec. 6661 |
| --- | --- | --- |
| $1,424.18 | $1,736.30 | $2,848.35 |

At trial, respondent was granted leave to amend his answer to assert an increase in the section 6661 addition totax to 25 percent from 10 percent in accordance with the Omnibus Reconciliation Act of 1986, Pub. L. 99-509, 100 Stat. 1874, 1951.

Petitioner now claims that he is entitled to a dependency exemption for his son, a partnership loss in the amount of $39.58, and head of household filing status. We must decide whether petitioner is entitled to these benefits and whether petitioner is liable for additions to tax under section 6653(a)(1) and (a)(2). We must also decide whether or not the section 6661 additions to tax apply in this case and, if so, the applicable rate of the addition.

### FINDINGS OF FACT

Thomas Tweeddale (Petitioner) resided in Denton, Texas, when he filed his petition in this case. In 1983, he was unmarried and the father of two children.

Petitioner filed his Federal income tax return for the 1983 taxable year with the Internal Revenue Service Center in Austin, Texas. On his return, petitioner stated his occupation as "Sacradotal Ministers" [sic]. He also checked the filing status block indicating that he was single and noted that he was filing "as a tax exempt minister. See attached schedules." Petitioner stated on line 21 that he had other income of $79,021.45, noted that the amount was tax-

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the year in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.

exempt, and referred to Schedule "T." The remaining statements on the Form 1040 referred to taxes withheld and sought a refund of $4,496.12 (the amount withheld). Respondent determined the deficiency based on $79,021.45 income, single filing status, and one personal exemption.

Petitioner did not attach a "Schedule 'T' " with his Form 1040. He did, however, attach numerous documents relating to the Basic Bible Church of America. The attached documents included: a letter certifying that Tom Tweeddale was a minister of the Basic Bible Church, a certificate of ordination, a certificate of doctor of divinity, a letter from Jerome Daly, the "Archbishop" of the Church, outlining a Basic Bible Church Minister's obligations and duties, and a vow of poverty. Petitioner purchased the documents attached to his return from the Basic Bible Church of America for $1,200. Subsequent to issuing these documents, Jerome Daly was convicted of several tax offenses, all of which stemmed from his involvement with Basic Bible Church. *United States v. Daly,* 756 F.2d 1076 (5th Cir. 1985).

Petitioner claimed similar but not identical positions for the 1978 through 1981 taxable years. For those years, respondent also determined a deficiency against petitioner and that deficiency was decided by the Court. In a Memorandum Opinion filed April 13, 1987, we upheld respondent's determination in its entirety. *Tweeddale v. Commissioner,* T.C. Memo. 1987-197, affd. 841 F.2d 643 (5th Cir. 1988).

OPINION

The first question we must answer is whether petitioner is entitled to claim a dependency exemption for 1983. At trial, petitioner testified that his 15-year-old son Scott lived with him for the entire 1983 taxable year and that he provided all of Scott's support. He also stated that as part of his divorce decree he was entitled to claim a dependency exemption for one of his two children. The record in this case was left open for 30 days at the conclusion of the trial to allow petitioner to submit a copy of his divorce decree— which he did. The divorce decree supports petitioner's claim that he was entitled to claim an exemption for one of his

children while the children were dependents. The divorce decree also states that petitioner was required to pay child support of $150 per month per child during the children's minority.

Generally, for years ending before 1985, noncustodial parents are entitled to claim dependency exemptions for their children if they provide at least $600 per year towards the child's support and the divorce decree, separate maintenance agreement, or other written agreement provides that the noncustodial parent is entitled to the exemption. Secs. 151 and 152(e). By the express terms of the agreement, petitioner was required to contribute $1,800 toward each child's support and was also entitled to claim one dependency exemption. However, in order for petitioner to rightfully claim the deduction in this case he must demonstrate that he *actually* provided at least $600 toward his son Scott's support. This he has failed to do.

Petitioner's testimony is the only evidence on this issue. Petitioner did not produce canceled checks to evidence the amount of support he gave to Scott, nor did he call his son or ex-wife to testify. The presumption is that the evidence would not have been favorable. *Witchita Terminal Elevator Co. v. Commissioner*, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

We make the same findings regarding petitioner's entitlement to head of household filing status and the partnership loss. Petitioner did not present any evidence in addition to his own testimony regarding his entitlement to head of household filing status. Section 2(b) requires that a taxpayer be unmarried at the end of the year and that his or her abode be the home of the dependent for at least six months of the year in order to be entitled to head of household filing status. Petitioner testified that his son Scott lived with him during all of 1983. Again, petitioner could have corroborated his testimony but failed to do so.

Regarding his alleged partnership loss, petitioner presented his own testimony and a copy of a Form K-1 evidencing a loss of $39.58. Petitioner offered no other evidence regarding the partnership or his interest therein. We find that petitioner has failed to prove that he is

entitled to the dependency exemption, partnership loss, and head of household filing status.

*Additions to Tax—Section 6653(a)(1) and (a)(2)*

Petitioner has not presented any evidence nor has he argued that he is not subject to these additions to tax. Since petitioner bears the burden of proof on these additions, *Bixby v. Commissioner,* 58 T.C. 757 (1972), we uphold respondent's determination.

*Additions to Tax—Section 6661*

Section 6661 authorizes an addition to tax when there is a substantial understatement of income tax in any given taxable year. Sec. 6661(a). The addition to tax is equal to 25 percent of the amount of any underpayment attributable to the substantial understatement. Sec. 6661(a). A substantial understatement exists if in any year the amount of the understatement exceeds the greater of 10 percent of the amount required to be shown on the return or $5,000. Sec. 6661(b)(1). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2); *Woods v. Commissioner,* 91 T.C. 88 (1988).

If the taxpayer has substantial authority for his tax treatment of any item on the return, the understatement is reduced by the amount attributable thereto. Sec. 6661(b)(2)(B)(i). Similarly, the amount of the understatement is reduced for any item adequately disclosed either on the taxpayer's return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii). Stricter standards apply to tax shelter items. There is no "adequate disclosure" safe harbor for tax shelters. Sec. 6661(b)(2)(C)(i)(I). Instead, the amount of the understatement under section 6661 may only be reduced in the case of tax shelter items if there is substantial authority for the taxpayer's position and the taxpayer reasonably believed his tax treatment of such item was more likely than not the proper treatment. Sec. 6661(b)(2)(C)(i)(II).

In this case, there is no question that there was a substantial understatement within the meaning of section

6661. Therefore, the question is whether the amount of the understatement can be reduced.

### *Tax Shelter Item*

Petitioner argues that he is not subject to the stricter standards for tax shelters because respondent did not specifically assert that petitioner's ministry constituted a tax shelter within the meaning of section 6661. Substantively, petitioner argues that his ministry is not a tax shelter because petitioner's principal purpose in establishing the ministry (which was not a separate entity) was not the evasion or avoidance of tax. We disagree with petitioner's procedural and substantive arguments.

Petitioner bears the burden of proving section 6661 does not apply. Rule 142(a). The statutory notice in this case stated simply that petitioner was liable for an addition to tax under section 6661 equal to $2,848.35. Unless respondent's theories are limited by the notice of deficiency or the pleadings, the burden remains on petitioner to negate each element. See, e.g., *Estate of Finder v. Commissioner*, 37 T.C. 411, 423 (1961); *Sorin v. Commissioner*, 29 T.C. 959, 969 (1958), affd. per curiam 271 F.2d 741 (2d Cir. 1959); *Carnick v. Commissioner*, 21 B.T.A. 12, 21 (1930).

Whether petitioner's ministry is a tax shelter is the threshold question that must be decided before the adequacy of disclosure is reached. Moreover, petitioner cannot rightfully claim surprise or prejudice. He was represented by counsel familiar with the statute. At trial, petitioner offered evidence to prove his ministry was not a tax shelter and then argued the point again on brief. Under these circumstances, we see no procedural impediment to applying the provisions under section 6661 relating to tax shelter items.

A tax shelter is defined in section 6661(b)(2)(C)(ii) as:

(ii) TAX SHELTER.—For purposes of clause (i), the term "tax shelter" means—

(I) a partnership or other entity,

(II) any investment plan or arrangement, or

(III) any other plan or arrangement,

if the principal purpose of such partnership, entity, plan or arrangement is the avoidance or evasion of Federal income tax.

The question in this case is whether petitioner's claim on his return to be tax-exempt, due to his "minister" status in the Basic Bible Church of America and executing a vow of poverty in favor of his chapter, is "any other plan or arrangement" within the meaning of section 6661(b)(2)(C)(ii)(III), such that the tax shelter provisions apply. The answer is yes.

The definition in section 6661(b)(2)(C)(ii)(III) is very broad and is set forth in *addition* to any "partnership," "other entity," or any "investment plan or arrangement" whose principal purpose is the evasion or avoidance of Federal income tax. Thus, it seems Congress intended to include within the meaning of "tax shelter" *any and all* plans or arrangements whose principal purpose is tax avoidance or evasion.

The elements of a "tax shelter" are, therefore (1) a plan or arrangement, (2) with the principal purpose of tax avoidance or evasion. We believe petitioner's "church" falls squarely within this definition.

Although section 6661(b)(2)(C)(ii) has not previously been construed, the "any other plan or arrangement" tax shelter definition language has been construed in the context of sections 6700 and 7408. At least three District Courts and two courts of appeal have held this language broad enough to encompass organized tax protestor activities.

Sections 6700 and 6661 were concurrently enacted as part of TEFRA in an integrated effort to strengthen tax compliance. Section 6700 provides an addition to tax on promoters of tax shelters. Specifically section 6700 provides:

SEC. 6700. PROMOTING ABUSIVE TAX SHELTERS, ETC.
  (a) IMPOSITION OF PENALTY.—Any person who—
    (1)(A) organizes (or assists in the organization of)—
      (i) a partnership or other entity,
      (ii) any investment plan or arrangement, or
      (iii) *any other plan or arrangement,* or
    (B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A) * * * [Emphasis added.]

Section 7408 provides that the United States can seek an injunction against the promoter of abusive tax shelters who violate section 6700. To prove a violation of section 6700 the United States must show that the individual organized

or sold an abusive tax shelter and that he made statements about the tax benefits investors would receive if they invested, which the individual knew or had reason to know were false or fraudulent.

Sections 6700 and 7408 have been applied to tax protestor group promoters on at least three separate occasions and in at least three different jurisdictions. The first instance was in *United States v. Savoie*, 594 F. Supp. 678 (W.D. La. 1984). In *Savoie* the District Court found that section 6700 was aimed at promoters of abusive tax shelters and other abusive tax avoidance schemes, citing S. Rept. 92-494, 269 (1982). The court said that to exclude Savoie, a tax protest organizer, from the scope of section 6700 would ignore the "plain (and sweeping) language of the statute." 594 F. Supp. at 680. The referred language was the "any other plan or arrangement" language found in both sections 6700 and 6661.

In *United States v. White*, 769 F.2d 511 (8th Cir. 1985), the Court of Appeals for the Eighth Circuit also found that sections 7408 and 6700 were appropriately applied to tax protestor activities.

In *United States v. Kaun*, 827 F.2d 1144 (7th Cir. 1987), the Court of Appeals for the Seventh Circuit upheld the District Court's section 7408 injunction against a tax protestor. The court acknowledged that Congress might have had a different strategy for enforcing the tax laws against tax protestors than it did in enforcing the law against abusive tax shelters. The court specifically noted that the concurrent enactment of sections 6700 and 6702 pertaining to frivolous tax returns supported that result. However, the Seventh Circuit nevertheless held:

under the broad language of sec. 6700, there is nothing to prevent a tax protest group from qualifying as an "abusive tax shelter." It is a familiar rule of statutory construction that, in the absence of clear legislative intent to the contrary, the language of the statute determines its meaning. See *Consumer Product Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108 (1980). The words "any other plan or arrangement" are clearly broad enough to include a tax protestor group. * * * [827 F.2d at 1148.]

We agree. Moreover, we think that taxpayers claiming to be exempt from income taxes because they are "ministers" of mail-order "churches" are just another brand of protest-

ers. We hold today that this typical mail-order "church" is a plan or arrangement under section 6661(b)(2)(C)(ii)(III) whose principal purpose is the avoidance or evasion of Federal income tax. See, e.g., *Basic Bible Church of America v. Commissioner,* 86 T.C. 110 (1986); *Basic Bible Church v. Commissioner,* 74 T.C. 846 (1980), affd. per curiam sub nom. *Granzow v. Commissioner,* 739 F.2d 265 (7th Cir. 1984); *Chermack v. Commissioner,* T.C. Memo. 1989-57. See also *Miedaner v. Commissioner,* 81 T.C. 272 (1983); *Roughen v. Commissioner,* T.C. Memo. 1987-461 and cases cited therein.

Petitioner was not a lone cowboy riding off on a wild stallion. He paid $1,200 for a set of documents constituting the plan or arrangement, purporting to establish a tax-exempt church with himself as tax-exempt minister. Further, we have not the slightest doubt that the principal purpose was tax avoidance.[2] Petitioner had income of $79,021.45 but claimed complete exemption solely on the basis of his status as a so-called minister, a totally meritless claim he abandoned on the eve of trial. Moreover, the organizer of this scheme went to jail for tax crimes as a result of it. See *United States v. Daly,* 756 F.2d 1076 (5th Cir. 1985). The court found that "Daly, who did not himself file BBC [Basic Bible Church] returns," formed the Basic Bible Church chapters to have "the appearance of religious organizations while disseminating information on how to * * * file returns so as to hamper IRS investigation and detection of the tax scheme." *United States v. Daly, supra* at 1079.

We are bone-tired of seeing the Court's time, respondent's resources, and the national treasury wasted in litigating these phony vow of poverty cases. This is exactly the type of behavior Congress meant to deter in enacting the tax shelter provisions of section 6661(b)(2)(C) and we so hold.

### Rate Of Addition To Tax—Section 6661

The appropriate percentage rate for the section 6661 addition to tax is 25 percent. In *Pallottini v. Commissioner,* 90 T.C. 498 (1988), we reviewed the Omnibus Reconciliation

---

[2]We are not persuaded that petitioner's purpose was otherwise by the fact that petitioner's "church" donated $500 to a scholarship fund, $700 less than petitioner paid for the spurious documents attached to his return.

Act of 1986 and the Tax Reform Act of 1986 to the extent they addressed section 6661. We set forth the reasons why 25 percent is the appropriate rate and decline to review our decision at this time.

To reflect the foregoing and concessions by both parties,

*Decision will be entered under Rule 155.*