# Commonwealth v. Karlin

*Jeffrey H. Gribb, deputy attorney general,* for the commonwealth.

*Robert J. Donatoni* and *Scott McLarty,* for defendant.

DOWLING, *J.,* May 8, 1989 —

*"When I use a word,"* Humpty-Dumpty said, in a rather scornful tone, *"it means just what I choose it to mean — neither more nor less."*

*"The question is,"* said Alice, *"whether* you *can make words mean so many different things."*

*"The question is,"* said Humpty-Dumpty, *"which is to be master — that's all."*[1]

---

1. L. Carroll, *Through The Looking Glass,* at 94 (1946). (emphasis in original)

In our adaptation of this Lewis Carroll classic, defendant Jack B. Karlin maintained that the Pennsylvania personal income tax statute meant just what he chose it to mean. Based upon information gleaned from attending tax protest seminars and upon his own study of the law, defendant concluded that the income tax was not a tax on income, but rather, that it was a levy specifically imposed on a privilege. The central tenet of Dr. Karlin's theory was that the right to earn income as a doctor in Pennsylvania was not a taxable privilege. Noting that the commonwealth had not granted him any privilege which produced a taxable activity, Karlin then determined he was not a "taxpayer"[2] and was not subject to the filing requirements of the Tax Code.

The Office of the Attorney General prosecuted defendant for willful failure to file Pennsylvania state income tax returns for the years 1985 and 1986. At trial the commonwealth established that Karlin, a resident of the State of New Jersey, realized a net profit from a medical practice he operated in Philadelphia, which by law triggered the duty to file a state income tax return.[3] Other evidence was introduced to demonstrate that Karlin had adopted a variety of tax avoidance theories over the years, including a vow of poverty and Fifth Amendment objections to filing a return.

Defendant did not dispute the basic facts, but in-

2. 72 P.S. § 7301(w) provides in pertinent part: " 'Taxpayer' means any individual, estate or trust subject to the tax imposed by this article. . . . "

3. "72 P.S. § 7308. *Nonresident individuals; taxable income* —

"The income of a nonresident individual shall be that part of his income derived from sources within this commonwealth as defined in this article."

See also, *Buckley v. Commonwealth*, 81 Pa. Commw. 530, 475 A.2d 160 (1984), affirmed 510 Pa. 326, 508 A.2d 281 (1986).

stead asserted his belief that neither he, nor anyone else similarly situated, was required by law to file a Pennsylvania personal income tax return. The sole defense presented at trial was that Karlin's failure to file the returns was a result of a good-faith misunderstanding of the law and did not constitute a willful violation of a known legal duty. Following a bench trial, the court rejected defendant's good-faith claim, noting that his interpretation of the tax laws was a "subversive and specious theory of great personal convenience," and convicted him on both counts.

Karlin was charged with violating section 353(c) of the Tax Reform Code of 1971, 72 P.S. §7353(c), which provides in pertinent part:

"Any person required under this article . . . to make a return . . . at the time or times required by law or regulations shall, in addition to other penalties provided by law, be guilty of a misdemeanor and shall, upon conviction, be sentenced to pay a fine not exceeding $5,000 or to undergo imprisonment not exceeding two years, or both."

To sustain a conviction under section 353(c), the commonwealth must prove defendant was a person required by law to make and file an income tax return for the years in question, that he failed to file a return for such year at the time required by law, and that the failure to file such a return was willful. Defendant has filed a motion in arrest of judgment, or in the alternative, a motion for a new trial, predicated on the assertion that the commonwealth presented insufficient evidence to establish the element of willfulness beyond a reasonable doubt. A second ground for relief was that the court erred in applying an objective, rather than subjective, standard in assessing the credibility of defendant's claim of a good-faith misunderstanding of the law.

To determine the sufficiency of the evidence, the

court must view the evidence in the light most favorable to the commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the trier of fact could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Scatena,* 508 Pa. 512, 518, 498 A.2d 1314, 1317 (1985); *Commonwealth v. Macolino,* 503 Pa. 201, 469 A.2d 132 (1983); *Commonwealth v. Stamps,* 493 Pa. 530, 427 A.2d 141 (1981).

Neither our research, nor that of counsel, has disclosed any Pennsylvania appellate court decisions construing the "willful" requirement in a personal income tax prosecution. We are aided in our analysis, however, by the culpability standards set forth in the Crimes Code. Section 302(g) provides:

"(g) *Requirement of willfulness satisfied by acting knowingly* — A requirement that an offense be committed willfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements appears." 18 Pa.C.S. §302(g). The Crimes Code defines "knowingly" at section 302(b)(2)(i) as:

"(2) A person acts knowingly with respect to a material element of an offense when:

"(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist."

These definitions are applicable to offenses defined in the Crimes Code and by any other statute. 18 Pa.C.S. §107(a).

Section 353 of the Tax Code is based upon a

substantially similar provision of the Internal Revenue Code, 26 U.S.C. §7203.[4] The U.S. Supreme Court has examined the meaning of "willfully" failing to file a tax return and has equated that requirement with an intentional act in violation of a known legal duty. *United States v. Pomponio,* 429 U.S. 10, 12 (1976). By requiring the government to establish an intentional violation of a known duty, the court "implement[ed] the pervasive intent of Congress to construct penalties that separate the purposeful tax violator, from the well-meaning, but easily confused, mass of taxpayers." *United States v. Bishop,* 412 U.S. 346, 361 (1973). The court has also opined that "Congress did not intend that a person by reason of a bona fide misunderstanding as to his tax liability . . . should become a criminal by his mere failure to measure up to the prescribed standard of conduct." *United States v. Murdock,* 290 U.S. 389, 396 (1933).

In applying these standards, the Seventh Circuit affirmed a conviction for failure to file income tax returns where the government introduced evidence of prior filings to demonstrate the defendant's willful failure to file in later years. *United States v. Birkenstock,* 823 F.2d 1026 (7th Cir. 1987). On his 1974 and 1975 returns Birkenstock attempted to reduce his reported income by dividing it by the number of dollars it would take to buy an ounce of gold on the London market and in the ensuing years he assigned all of his income to a "family trust" in an attempt to evade tax liability. The court held

---

4. "26 U.S.C. §7203. Willful failure to file return, supply information, or pay tax —

"Any person required under this title . . . to make a return . . . who willfully fails . . . to make such return . . . at the time or times required by law or regulations shall in addition to other penalties provided by law, be guilty of a misdemeanor."

these prior returns were relevant to show defendant's knowledge of the filing requirements and affirmed the conviction.

In *United States v. Burton,* 737 F.2d 439 (5th Cir. 1984), defendant maintained that wages did not constitute income so he did not file income tax returns. Burton challenged his conviction on the basis that he maintained the belief in good faith and thus did not have the requisite intent to violate the Internal Revenue Code. The court rejected this argument and noted that it is not a defense to a willful failure to file tax returns when the defendant acts out of disagreement with the law or out of a belief that the law is unconstitutional. See also, *United States v. Bressler,* 772 F.2d 287 (7th Cir. 1985).

The underlying premise of both the state and federal "willful" requirement is to separate those taxpayers who through negligence, inadvertence or mistake fail to comply with the statutory requirements from those who demonstrate an obdurate refusal to acknowledge what the tax code requires. In the instant case, the record is replete with evidence which is inconsistent with a credible claim of good-faith misunderstanding of the requirements of the law. The records of the Department of Revenue revealed that defendant filed state personal income tax returns for the years 1971 through 1976 and then ceased doing so. For the year 1978, defendant filed a so-called "Fifth Amendment return" on which the inscription "object, Fifth Amendment" was entered in the spaces designated for income figures. The evidence also showed that defendant filed City of Philadelphia net profits tax returns for the prosecution years of 1985 and 1986 and also filed federal income tax returns with the Internal Revenue Service for said years, albeit under protest. On both of the federal returns, Karlin

inscribed: "Filed involuntarily, under duress, and by direct order of U.S. Dist. Ct. Judge A.E. Thompson." All of these returns contained a properly prepared Schedule C, Profit (Loss) From Business or Profession, indicating an understanding of the business accounting which served as the basis for the city and federal returns, and which would have served as the basis for reporting and computing his state income tax liability if he had chosen to do so.

Defendant's appeal from an estimated assessment issued by the Department of Revenue for tax year 1979 was denied by the Department of Revenue's Board of Appeals in November 1981. In doing so, the Board of Appeals rejected the legal theories which defendant advanced as not requiring him to file a state income tax return. Defendant's appeal from this ruling to the Board of Finance and Revenue resulted once again in defendant's legal theories being rejected. Despite the rejection of these theories by two administrative tribunals of the commonwealth, defendant persisted at trial with his claim that he was under a bona fide misunderstanding of the legal requirement to file returns.

Other factors affecting the credibility of defendant's claim of good faith are the fact that he retained a firm of certified public accountants throughout the 1970s and 1980s, and yet never sought their professional advice as to whether he was required to file a Pennsylvania state income tax return. Also, he refused to consult with any attorneys in the Philadelphia vicinity for advice as to whether he should file state income tax returns, and instead accepted as gospel the tax avoidance teachings of out-of-state attorneys supplemented by his own study of the matter. He stopped filing state income tax returns in 1976, and since then has espoused an ever-changing array of "legal" theories,

all of which are designed to help him escape the obligation to pay taxes. In addition to the 1978 so-called "Fifth Amendment return," Karlin's other gambits included having himself ordained as a minister of the Life Science Church and taking a vow of poverty, and writing certified letters to the Commonwealth of Pennsylvania and treating the lack of a response thereto as a tacit approval of his misguided theories. Defendant placed great reliance on the fact that he never received a response to these letters. He now argues that this demonstrates his good faith and also explains why he was mistaken as to the requirements of the law. In actuality, the use of this tax protester ploy is yet another piece of circumstantial evidence that defendant's claim that he was operating under a good-faith misunderstanding of the legal requirement to file a return is not worthy of belief.

In response to a letter from the Collections Division, Office of Attorney General, concerning his delinquent taxes, Dr. Karlin replied:

"I find I need an explanation of the symbol ($). This ($) preceeds [sic] the figure 2,884.52. Kindly tell me what it means and where I might obtain the same. If I don't know what they are, or where to obtain them, how can I forward them to your office?"

This letter is probative of the fatuous positions adopted by the defendant in order to escape tax liability.

The utter futility of attempting to reason with defendant or to explain to him what provisions of the law require him to file returns is amply illustrated by the two interviews and follow-up correspondence between defendant and Special Agent Hines, as well as defendant's testimony in court. When confronted with the verbiage of the tax

statute by the Department of Revenue agents, Karlin engaged in his usual polemics and semantics. Any attempt to confine the discussion to the plain language of the filing requirements was as fruitful as attempting to nail Jell-O to a wall.

It strains credulity to contend in the face of this overwhelming evidence that defendant's conduct was not willful, but rather was the product of a good-faith misunderstanding of the Tax Code requirements. Defendant was aware of his legal duty to file personal income tax returns and his refusal to comply emanates from his obdurate refusal to admit that the Tax Code is constitutional and is applicable to him. Defendant's challenge based upon the sufficiency of the evidence must fail.

Karlin's second allegation of error is that the court misapplied an objective standard in assessing the credibility of his good-faith defense. He maintains that the law requires a subjective test, i.e., did defendant really misunderstand the legal obligations imposed on him. Defendant's claim must fall under either test. With regard to an objective standard, Karlin admitted that most people do not share his interpretations of the tax law. A reasonably prudent person under the circumstances would be put on notice by the Tax Code that income earned in Pennsylvania is subject to the state income tax.

Under a subjective standard, we must view defendant's actions in the context of the totality of the evidence produced at trial. We cannot crawl within defendant's psyche to evaluate the credibility of his claimed good-faith misunderstanding of the law. Karlin maintained he was sincere in his beliefs and argues that no one has ever demonstrated to *his* satisfaction the error of *his* reading of the tax statute. When viewed in light of all of the evidence,

Karlin's refusal to file the 1985 and 1986 tax returns was willful under any definition of that term.

Defendant cannot define the tax code nor the penalties contained therein to suit his personal fancy. In the end, it is the legislature and the courts which are masters of the word set forth in the tax laws.

Accordingly, we enter the following

### ORDER

And now, May 8, 1989, defendant's post-trial motions are denied. The attorney general is directed to present defendant for sentencing.