JOHN J. SCHELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schell v. Commissioner
Docket No. 22986-91
United States Tax Court
T.C. Memo 1994-164; 1994 Tax Ct. Memo LEXIS 165; 67 T.C.M. (CCH) 2692; April 18, 1994, Filed *165 Decision will be entered for respondent. For petitioner: Kim W. Comfort. For respondent: Laurel M. Robinson. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Addition to tax
Year
Deficiency
Sec. 6661
1985
$ 13,696
$ 3,424
1986
8,021
2,005
1987
3,174
-- The issues for decision are: (1) Whether petitioner was engaged in an active trade or business during taxable years 1985, 1986, and 1987, and is therefore entitled to deductions for Schedule C business expenses under section 162; [1] and (2) whether petitioner is liable for additions to tax under section 6661(a) for substantial understatement of tax liability for tax years 1985 and 1986. FINDINGS OF FACT Some of the facts *166 have been stipulated. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. At the time he filed his petition, petitioner resided in Graham, Washington. Petitioner was an airline pilot for 28 years before retiring from Northwest Airlines on September 30, 1992. Petitioner had earned a private pilot's license and an aircraft mechanic's license by the time he graduated from high school. He then joined the Air Force and went through electronics school for gunneries on B-52's and B-36's. After the Air Force, he was an instructor at Clover Park School in both the airframe and powerplant and flight schools. While an instructor, he continued serving in the Washington National Guard. Four years after leaving the Air Force, petitioner returned to active duty with the Army where he attended tank school in Fort Knox, Kentucky, so that he would not lose his commission in the Guard. It is here that he was exposed to various types of weapons and explosives. He then attended helicopter school for 6 months in Fort Sill, Oklahoma, where he gained experience in tactical helicopter gunnery and spotting artillery. Finally, he spent several months *167 in Fort Rucker, Alabama, where he received fixed wing and multi-engine training as well as instrument training. In the early 1960's, petitioner provided helicopter rides at the Western Washington Fair in Puyallup, Washington. Petitioner observed that strings from released helium balloons would get tangled in the helicopter blades. From this observation, he conceived the development of a mortar-fired wire device for entrapping helicopters. Petitioner's idea was further confirmed while he attended Army helicopter school. Several incidents occurred where helicopters ran into wires, producing at least one fatality. In addition to rebuilding several helicopters that had flown into wires, petitioner observed what helicopters were doing in Vietnam -- going into fields indiscriminately -- and believed that some sort of wire device would be a very marketable and profitable item to build. During the 1970's, petitioner formed Schell Enterprises, a business focused on repairing and rebuilding helicopters. However, the business gradually became dormant and subsequently ended in 1979. Petitioner then returned to the idea of a wire device. Petitioner's idea centered on the fact that helicopters *168 flying low to the ground were vulnerable to attack because their blades could become entangled with some object, lose power, and thus become grounded. Petitioner conceived of a weapon where wires put into the ground could be shot into the air through the detonation of explosive devices triggered by sound. Once airborne, the wires would entangle the helicopter's rotor blades and render the aircraft helpless, causing it to crash. During the early 1980's, petitioner met with a patent attorney regarding his idea, which he called Highwire. He was advised against seeking a patent because of the possibility of being delayed in patent court, during which time he would be unable to develop the business. Nevertheless, in 1983, petitioner began experimenting with various ideas of propulsion and determining the optimum disabling wire. He used the same shop he had used for his helicopter repair business in the 1970's, located on his residential property in Graham, Washington. A small shed was converted into an office and desks, drawing tables, a computer with word processing and drafting programs, filing cabinets, and a separate business telephone line were purchased. A separate bank account *169 for the business was opened at Puget Sound National Bank. A rental expense was claimed for tax years 1985 and 1987, but not for tax year 1986. [2] However, petitioner did not report the corresponding rental income on his individual return for either year. Petitioner discussed his ideas with other helicopter pilots in the Guard. He also hired Puget Sound Graphics to draw illustrations of his idea to be used in presentations to prospective buyers. Petitioner's daughter, Christy Baskett, joined Highwire around January 1985. Ms. Baskett previously worked as an administrative assistant for SalAir, Inc., an airfreight company. At the time she joined Highwire, Ms. Baskett was a single parent supporting her son. In addition to petitioner, Ms. Baskett was the only employee of Highwire during its years of operation. In 1985, Ms. Baskett's primary duties were research and development *170 and secretarial. She researched what needed to be done, what materials were to be used, how the device would be detonated, and military tactics. She also filed for the necessary licenses to work with explosives. In addition, she maintained the company's books and paid the necessary expenses. Her compensation was $ 18,000 for 1985 and $ 4,500 for 1986. However, Ms. Baskett did not report her income from Highwire for either year. [3]
During 1985 through 1987, petitioner and his daughter traveled through the upper Northwest searching for old yet operative helicopters to purchase for testing. In early 1986, Ms. Baskett switched to part-time work for Highwire while working the remaining time at Good Samaritan Hospital. Ms. Baskett's employment with Highwire subsequently *171 ended some time in 1986. Petitioner did not hire a replacement for her position. Petitioner's main marketing efforts were directed towards the military. During the latter part of 1986, petitioner contacted Tom Shelton, a colonel in the Army Reserves and petitioner's personal friend. Petitioner never had actual contact with any officials in the Pentagon. Through his discussions with Mr. Shelton, petitioner decided that a working model was necessary to prove to himself the feasibility of the weapon. He ultimately produced a prototype and tested it with compressed nitrogen as opposed to explosives. However, it eventually became clear that petitioner's idea was not marketable to the military, due to budget constraints and superiority of other weapons. Consequently, petitioner ceased to operate Highwire some time in 1987. All of petitioner's records pertaining to the Highwire venture, including the original schedules and checks and the floppy disks, were destroyed in floods that occurred in both 1990 and 1991. An independent certified public accountant, Ed Raisl, prepared petitioner's tax returns for each of the years in issue. Petitioner did not report any gross receipts from *172 the business during the years in issue. Petitioner did report wages of $ 169,290 in 1985, $ 166,096 in 1986, and $ 168,141 in 1987 from Northwest Airlines. On July 15, 1991, respondent issued a statutory notice of deficiency to petitioner. In that notice, respondent disallowed the entire amount of Schedule C business expenses claimed by petitioner for the years in issue: $ 28,354 for 1985, $ 17,824 for 1986, and $ 8,083 for 1987. The disallowed expenses consisted primarily of wages paid to his daughter and automobile expenses. OPINION The determinations of respondent in the statutory notice of deficiency are presumptively correct, and petitioner has the burden of proving otherwise. Rule 142(a); Welch v. Helyering, 290 U.S. 111, 115 (1933). Schedule C Business Expenses
Generally, under section 162, a taxpayer may deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business. Sec. 162(a). To determine whether activities constitute carrying on a trade or business, this Court has held that all the facts and circumstances in each case must be examined. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). *173 No trade or business exists unless the taxpayer enters into and carries on the activity with a good faith purpose of making a profit or in the belief that a profit can be made from the activity. Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472. The reasonableness of the taxpayer's belief that the activity will generate a profit is not controlling. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. However, a taxpayer's mere hope that an activity will generate profits, in the absence of any specific plans to implement that hope, does not constitute a good faith belief or purpose. Sutherland v. Commissioner, T.C. Memo. 1968-20. A sporadic activity, a hobby, or an amusement diversion does not qualify. Commissioner v. Groetzinger, supra.Petitioner bears the burden of proving the requisite profit objective. Keanini v. Commissioner, 94 T.C. 41, 46 (1990) *174 (citing Sabelis v. Commissioner, 37 T.C. 1058, 1062 (1962)). A trade or business can exist despite the lack of profits in the initial years provided there is a profit potential. Sabelis v. Commissioner, supra. Although the taxpayer need not expect that profits will be generated immediately or within a short time, a good faith intent to make a profit must exist. See, e.g., Hill v. Commissioner, T.C. Memo. 1971-127, affd. per curiam 75-2 USTC par. 9632 (10th Cir. 1973). One test applied in making this factual determination requires that the activity be regular, frequent, active, and substantial in order to constitute a trade or business. West v. Commissioner, T.C. Memo. 1986-96. Factors to examine in determining whether a profit objective exists include the following: (1) Abandonment of the activity when the inability to generate profits was ascertained; (2) marketing and sales efforts on behalf of the product; (3) whether significant amounts of time and effort were devoted to the activity; (4) amount of money invested in the *175 activity; (5) expectation of large profits if the activity is successful; (6) prior existence or development of expertise with respect to the activity; (7) investigation of the activity's profit potential; (8) maintenance of detailed records; and (9) retention of expert advisors or consultants. See Thomas v. Commissioner, 792 F.2d 1256 (4th Cir. 1986), affg. 84 T.C. 1244 (1985); Cooper v. Commissioner, 88 T.C. 84, 109 (1987); Waddell v. Commissioner, 86 T.C. 848, 893 (1986), affd. 841 F.2d 264 (9th Cir. 1988); Gestrich v. Commissioner, 74 T.C. 525, 529 (1980), affd. without published opinion 681 F.2d 805 (3d Cir. 1982); [4]Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); Churchman v. Commissioner, 68 T.C. 696, 702 (1977); Pirnia v. Commissioner, T.C. Memo. 1989-627; Reed v. Commissioner, T.C. Memo. 1988-470; Maximoff v. Commissioner, T.C. Memo. 1987-155; *176 Haddock v. Commissioner, T.C. Memo. 1986-476; Stahnke v. Commissioner, T.C. Memo. 1980-369; sec. 1.183-2(b), Income Tax Regs. No one factor is conclusive; the determination is based on all the facts and circumstances. Engdahl v. Commissioner, supra; sec. 1.183-2(b), Income Tax Regs.
In the case at hand, evaluation of the above factors leads to the conclusion that petitioner did not enter into Highwire with the requisite profit motive and thus it was not a trade or business. First, petitioner did not devote significant amounts of time and effort to the activity. Petitioner worked full time as an airline pilot for Northwest Airlines during the entire fiscal life of Highwire. Petitioner did not devote a set amount of hours each week to the project. Second, petitioner did not devote substantial *177 amounts of money to the activity. Petitioner presented no evidence of any efforts to obtain financing for the project -- a seemingly crucial component had the project been successful. Furthermore, petitioner failed to prove that he investigated the activity's profit potential. There was no business plan or timetable. More importantly, petitioner made no substantive marketing or sales efforts on behalf of his wire device. He spoke to a couple of pilots in his reserve unit and a personal friend who was a colonel in the reserves. However, he made no important contacts in the Pentagon itself, which would have been the primary consumer of such a device. Finally, he did not consult with any consultants or experts in the armaments industry to evaluate the feasibility of such a device. Petitioner testified consistently about maintaining the secrecy of the project. Nevertheless, he failed to patent his idea. Petitioner explained that he consulted an attorney who advised not to seek a patent because it would hold up work on the device. However, petitioner presented no evidence of a set time frame which the patent process could have delayed. Therefore, we find the fact that petitioner *178 failed to patent the device or really substantiate the device's feasibility as persuasive evidence that petitioner lacked the requisite profit objective, and thus Highwire was not a trade or business. Furthermore, based on the record in this case, petitioner's employment of his daughter is not persuasive evidence that Highwire constituted a trade or business. Petitioner's own testimony convinced this Court that he hired his daughter at a time in her life when she needed additional outside support. She was a single parent and was driving numerous miles back and forth to work. By hiring Ms. Baskett to assist him in Highwire, petitioner was able to match her former salary, reduce her commute, and provide her the opportunity to spend time with her son. No evidence was presented showing that the daughter worked regular or set business hours every week. In addition, Ms. Baskett had no formal training in the areas of aviation or armaments. Even though her lack of training is not conclusive, we find petitioner's decision to not replace her as further evidence that a trade or business did not exist. Although we can appreciate petitioner's efforts to help his daughter, such endeavors *179 are not indicative of a business purpose. The final troubling aspect of this case is the lack of documentation to substantiate the claimed deductions. We note that deductions are strictly a matter of legislative grace, and a taxpayer has the burden of establishing that he or she is entitled to any deduction claimed on the return. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940). Taxpayers are generally required to substantiate claimed deductions by maintaining some type of records. See sec. 1.6001-1(c), Income Tax Regs. This Court is not bound to accept the unverified, undocumented testimony of petitioner. See Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Under certain circumstances, where a taxpayer has no records to substantiate claimed deductions, we are permitted to estimate expenses when we are convinced from the record that the taxpayer has incurred such expenses. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Williams v. Commissioner, T.C. Memo. 1994-63. *180 However, in order to make an estimation, "there [must] be sufficient evidence to satisfy the trier that at least the amount allowed in the estimate was in fact spent or incurred for the stated purpose." Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Until the trier has the assurance from the record, relief to taxpayer would be "unguided largesse". Id.; Cohan v. Commissioner, supra at 544; Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). As previously determined, we find that the record, comprised almost entirely of petitioner's and Ms. Baskett's testimony, does not constitute sufficient evidence that the amounts in issue were in fact spent or incurred for a business purpose. Accordingly, we sustain respondent's determination of deficiencies for each of the years in issue. Additions to Tax -- Substantial Understatement
Respondent determined that petitioner is liable for additions to tax under section 6661 for substantial understatement of tax liability for tax years 1985 and 1986. Section 6661(a) imposes an addition to tax of 25 percent of the amount *181 of any underpayment attributable to a substantial understatement of tax. An understatement is substantial if it exceeds the greater of: (1) 10 percent of the tax required to be shown on the return for a taxable year or (2) $ 5,000. Sec. 6661(b)(1)(A). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2)(A); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989). In the case at hand, the understatements for tax years 1985 and 1986 both exceed $ 5,000, and, therefore, are substantial within the meaning of section 6661(a). Accordingly, we find petitioner liable for the addition to tax for both years in issue. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise indicated.↩
2. Petitioner claimed rent expense on business property on Schedule C of Form 1040 in the amounts of $ 1,500 for 1985, and $ 1,310 for 1987.↩
3. Ms. Baskett's unsigned individual tax returns for 1985 and 1986 proffered into evidence were not received because certified Government records clearly established that she had not filed individual returns for either tax year prior to the date of trial.↩
4. Criticized on other grounds by the Supreme Court in Commissioner v. Groetzinger, 480 U.S. 23↩ (1987).