RICHARD EDWARD STIRLING, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stirling v. Commissioner
Docket No. 21090-93
United States Tax Court
T.C. Memo 1995-104; 1995 Tax Ct. Memo LEXIS 103; 69 T.C.M. (CCH) 2065; March 13, 1995, Filed *103 Decision will be entered under Rule 155. Richard Edward Stirling, pro se. For respondent: Frank D. Armstrong, Jr.
WOLFE
WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION WOLFE, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency of $ 7,166 in petitioner's 1990 Federal income tax and a penalty pursuant to section 6662(a) in the amount of $ 1,433. After concessions, [2] the issues for decision with respect to petitioner's 1990 Federal income tax are: (1) Whether petitioner's exhibit 30 is admissible into evidence; (2) whether petitioner is entitled to a nonbusiness bad debt deduction with respect to funds he advanced to Tina Harris; (3) whether petitioner is entitled to a business bad debt deduction for funds he allegedly *104 advanced to and expended for Highlander Graphics; [3] (4) if petitioner is not entitled to a business bad debt deduction, whether he is entitled to a capital loss with respect to Highlander Graphics; (5) whether petitioner is entitled to a moving expense deduction in excess of $ 4,172; and (6) whether petitioner is liable for the accuracy-related penalty for negligence under section 6662. *105 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner resided in Raleigh, North Carolina, when his petition was filed. During all times relevant to this case, petitioner was employed on a full-time basis as an engineer by Carolina Power and Light Company, Incorporated (Carolina Power). In April of 1987, petitioner and Ronald Gray (Gray) entered into a venture to produce and sell silk screened T-shirts. The venture was called Highlander Graphics (Highlander). Pursuant to an oral agreement, petitioner was to provide funds to purchase silk screening equipment, supplies, and other items necessary to start the business, and Gray was to produce and sell the finished product. The agreement provided that any profit was to be divided equally between petitioner and Gray. The risk of any losses was borne by petitioner. On June 26, 1987, petitioner and Gray opened a checking account in Highlander's name. Petitioner, petitioner's mother, Gray, and Gray's wife were signatories on the account. In 1987, petitioner rented business property, initiated utility service, and obtained various permits required for Highlander's operation. He also advanced funds *106 directly to Highlander, expended funds to purchase silk screening equipment for Highlander, and paid for some of Highlander's supplies and utility bills. The equipment ultimately was returned to petitioner. In addition, in 1987 petitioner's mother, Jane Stirling, and petitioner's brother, Kent Stirling, advanced funds to Highlander. Kent Stirling wired $ 5,000 from his checking account directly into the Highlander checking account. Around August or September of 1987, a disagreement arose between petitioner and Gray and amicable relations terminated. At that time, the art work, sales lists, and checkbook were not on the Highlander premises. Following the disagreement, petitioner no longer had ready access to the premises of Highlander. In September or October of 1987, Gray and Kim Blevins, the silkscreen artist for Highlander, incorporated the business under the name Highlander Graphics, Inc. (the corporation). After petitioner's disagreement with Gray, petitioner negotiated with Gray and the corporation in an attempt to resolve the conflicts concerning Highlander. The negotiations failed. Thereafter, petitioner and his mother instituted an action in the General Court of *107 Justice, Superior Court Division, Wake County, North Carolina, against Gray and the corporation. In a signed affidavit (the affidavit) filed with respect to that suit petitioner attested that he was entitled to the following amounts from Gray and the corporation: (1) Loan proceeds in the amount of $ 11,000; (2) equipment rental in the amount of $ 7,000; (3) salary owed in the amount of $ 2,500; (4) expenditures for the benefit of Gray and Highlander made by check totaling $ 10,139.27; and (5) cash expenditures in the amount of $ 2,714.70. On April 7, 1989, the Superior Court of North Carolina entered a default judgment in favor of petitioner and his mother and awarded treble damages for unfair and deceptive trade practices. Petitioner attempted to retain counsel to aid him in collecting on the default judgment, but in a letter dated June 7, 1989, an attorney that he approached declined to represent petitioner and his mother on a contingency basis because "the chances of recovery did not support the substantial amount of work that would be involved." A deputy sheriff of Wake County, North Carolina, attempted to execute upon the judgment during the period of July 12, 1989, through *108 October 11, 1989, but indicated on the writ of execution that he could not locate Gray or any property upon which to levy. A rent check to petitioner from Randy Rankins, dated October 20, 1988, in the amount of $ 338 was returned for insufficient funds. By letter dated February 14, 1989, petitioner demanded payment from Randy Rankins and indicated that if Randy Rankins did not pay petitioner, petitioner would file suit to collect the money. There is no evidence that Randy Rankins was unable to pay petitioner $ 338 in 1988, 1989, or 1990. In 1987, petitioner loaned Tina Harris $ 1,700. In 1990, Carolina Power transferred petitioner from Raleigh, North Carolina, to Hartesville, South Carolina. Carolina Power paid the moving company that petitioner employed for his move. Carolina Power reimbursed petitioner $ 4,172 for the move, and petitioner included this amount in his gross income. On his 1990 Federal income tax return, petitioner claimed a Schedule C business bad debt deduction in the amount of $ 28,525 and a Schedule A moving expense deduction in the amount of $ 6,067.77. Respondent disallowed petitioner's claimed business bad debt deduction and moving expense deduction *109 because of lack of substantiation. In addition, respondent determined that petitioner was liable for the accuracy-related penalty for negligence in the amount of $ 1,433. OPINION At trial, petitioner offered into evidence as exhibit 30 a copy of a newspaper legal notice of an action instituted in the General Court of Justice, District Court Division, Union County, North Carolina, Jane Stirling v. Tina Harris, No. 88 CVD 0221 (Aug. 25, 1988). Respondent objects to the admissibility of exhibit 30 on the grounds of relevance. This Court reserved ruling upon the admissibility of exhibit 30 until the filing of all briefs in order to allow petitioner an opportunity to show the relevancy of exhibit 30. Petitioner failed to address the issue on brief. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Since we do not see the relevance of exhibit 30 to the instant case under this standard, we hold that exhibit 30 is inadmissible, and we have not considered it in our resolution of the disputes in this case. *110 As to the substantive issues before us, petitioner contends he is entitled to a business bad debt deduction in the amount $ 28,525, a nonbusiness bad debt in the amount of $ 1,700, and a moving expense deduction in the amount of $ 6,067.77 with respect to his 1990 Federal income tax. Respondent argues that petitioner is not entitled to any bad debt deduction and that petitioner is not entitled to a moving expense deduction in excess of $ 4,172. Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving his entitlement to any deduction claimed on the return. INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). In general, section 166(a) allows an individual to deduct losses sustained from bad debts which become worthless during the taxable year. Only a bona fide debt, arising from a "debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money" qualifies for a deduction under section 166. Sec. 1.166-1(c), Income Tax Regs.
Losses sustained from business bad debts *111 are treated differently from those sustained as nonbusiness bad debts. Sec. 166(d); sec. 1.166-5, Income Tax Regs. Business bad debts are allowable as deductions against ordinary income, whereas nonbusiness bad debts are deductible in the same manner as short-term capital losses. Sec. 166(d). Petitioner contends that he is entitled to a nonbusiness bad debt with respect to $ 1,700 advanced to Tina Harris during 1987. Petitioner did not introduce any persuasive evidence of the worthlessness of the loans to Tina Harris or the date such loans allegedly became worthless. Petitioner has failed to show that he is entitled to a nonbusiness bad debt deduction in 1990 with respect to the funds advanced to Tina Harris. See sec. 166(a). Petitioner contends that he is entitled to a business bad debt deduction in the amount of $ 28,525 on his 1990 Federal income tax return for amounts he expended with respect to Highlander during 1987. Respondent contends that petitioner has not demonstrated that the alleged advances to Highlander and expenditures for Highlander's benefit were in fact loans or the amounts of any such advances and expenditures. We agree with respondent that petitioner *112 has not shown that the funds advanced to Highlander and Gray were bona fide debts and conclude that they were an equity investment. Advances which are capital contributions do not give rise to any bad debt deduction. Raymond v. United States, 511 F.2d 185, 189 (6th Cir. 1975); Estate of Dunn v. Commissioner, T.C. Memo. 1990-401. The basic question is whether the purported lender had a reasonable expectation of repayment regardless of the success of the business or whether his advances were put at the risk of the venture. Fin Hay Realty Co. v. United States, 398 F.2d 694, 697 (3rd Cir. 1968); Stark v. Commissioner, T.C. Memo. 1982-639. On brief, petitioner contends that the funds he invested in Highlander were personal loans and loan guarantees and that petitioner is entitled to deduct them as business bad debts because one of his dominant motivations in making the loans was to earn a salary. Petitioner's argument is without merit. The record does not support petitioner's statement on brief that he advanced or expended the funds to or for Highlander with *113 the dominant motivation of earning a salary. Petitioner was employed on a full-time basis by Carolina Power at all times relevant to this case. Throughout the trial and on brief, petitioner characterized his relationship with Gray as a partnership. He did not introduce any evidence that his advances and expenditures with respect to Highlander were loans. He testified that he was at risk for all of the amounts he advanced and expended. Petitioner's only expectation of profit was if Highlander was profitable. After evaluating all of the facts and circumstances in this case, we are convinced that petitioner's advances and expenditures with respect to Highlander were contributions to its capital rather than loans. Petitioner made the advances and expenditures not as a creditor who has a reasonable expectation of repayment but as an investor who assumes the risks and stands to profit from the prospective success of the business. Under the circumstances of this case, petitioner is not entitled to a business bad debt deduction under section 166 for 1990 with respect to the amounts he advanced to and expended for Highlander. Petitioner is entitled to capital loss treatment on the *114 worthlessness of his interest in Highlander represented by his advances and expenditures. See Lease v. Commissioner, T.C. Memo. 1993-493. Petitioner is entitled to a long-term capital loss in 1990 with respect to his investment in Highlander if he shows: (1) The amount of his investment, see section 6001; (2) that the investment became worthless in 1990, Romer v. Commissioner, 28 T.C. 1228, 1253 (1957); and (3) that he has not previously taken deductions with respect to the investment; i.e., that he is not claiming a double deduction. See Alling v. Commissioner, 102 T.C. 323, 332 (1994). Petitioner has failed to explain how he arrived at the amount that he claimed as a business bad debt on his 1990 Federal income tax return. On brief, petitioner claims that he invested $ 41,024.82 in Highlander. In the affidavit petitioner attested that he invested $ 23,854, net of claimed equipment rental and unpaid salary. On Schedule C of his 1990 Federal income tax return, petitioner claimed a business bad debt deduction in the amount of $ 28,525. On brief, in showing the total amount that he allegedly *115 spent with respect to Highlander, petitioner duplicated expenses, included expenditures for equipment that was returned to him, claimed loans to Highlander from petitioner's brother, and included a refundable electric deposit. Petitioner included checks in the amount of $ 10,139.27 twice in his calculation of the amount he invested in Highlander. He also included expenses in the amount of $ 7,000 related to the purchase of silk screening equipment that was returned to petitioner. In his calculation, petitioner included $ 14,000 for the alleged guarantee of loans his brother made to Highlander. Although petitioner testified that a $ 5,000 check payable to Highlander, drawn on petitioner's account, and a $ 5,000 wire transfer into Highlander's checking account were actually loans to Highlander from petitioner's brother, in the affidavit, petitioner claimed that he had invested those amounts. Petitioner contends that he personally guaranteed those loans and that he is entitled to a bad debt deduction in the amount of $ 14,000 ($ 10,000 principal amount plus interest) with respect to those alleged guarantees. Petitioner failed to introduce any evidence, besides his uncorroborated *116 and self-serving testimony, that he repaid those loans. He also failed to prove that Highlander or the corporation did not repay them. Although petitioner introduced numerous canceled checks, credit card slips, and shipping receipts, the record does not include proof that such amounts were actually contributed to the venture. On brief, petitioner contends that he invested in Highlander cash advances from his credit cards in the amount of $ 4,000. In the affidavit, however, petitioner only claimed that he invested $ 1,000 from credit card advances. In addition, $ 3,000 of the credit card advances that petitioner claims he invested in Highlander was advanced to petitioner on March 9, 1987, before Highlander came into existence. In addition to the credit card advances, petitioner claims that he invested both cash expenditures in the amount of $ 2,714.70 and checks made payable to cash in the amount of $ 2,800 in Highlander. Petitioner testified that he did not receive any money from Highlander after April of 1987. Documents in the record indicate that petitioner received some reimbursement from the corporation, that equipment was returned to him, and that he received merchandise *117 for sale. Any payments or reimbursements that petitioner received from Highlander reduce the amount of petitioner's capital loss from his investment. Petitioner failed to introduce any books or records of Highlander to show that the amounts he expended were actually invested in or expended for the benefit of Highlander. Although we believe that petitioner contributed some funds to Highlander during 1987, petitioner has failed to show the amount that he contributed or the amount of any repayments he may have received. Moreover, petitioner failed to show that he has not previously taken deductions with respect to Highlander on his Federal income tax returns. On Schedules C of his 1987 and 1988 Federal income tax returns, petitioner claimed cost of goods sold in the amounts of $ 9,413.34 and $ 1,248.58, respectively. The amounts claimed as cost of goods sold for 1987 and 1988 represent amounts claimed as purchases and incidental labor. On both his 1988 and 1989 Schedules C, petitioner indicated that he had no beginning or ending inventory. On Schedules C of his 1988 and 1989 Federal income tax returns, petitioner claimed business bad debts in the amounts of $ 11,868.80 and $ *118 11,700, respectively. Petitioner did not report any income on his 1987, 1988, 1989, 1990, or 1992 Schedules C. Petitioner stated that at all times relevant to this case, including 1987 through 1990, he was the sole proprietor of Capitol Printing, doing business as Atlantic Coast Graphics (Capitol Printing), a paper printing company. On brief, he contends that all entries on his Schedules C for 1987, 1988, and 1989 related to Capitol Printing. Petitioner testified that until 1990, he had never claimed any deductions on his Federal income tax returns with respect to Highlander. But he failed to provide convincing evidence that the claimed costs of goods sold and bad debt deductions shown on Schedules C for 1987, 1988, and 1989 were not related to Highlander, rather than to the alleged paper printing business that had no gross revenue during those years. In effect, petitioner has provided us only with a jumble of checks and receipts, inconsistent claims and arguments, tax schedules listing deductions for enterprises which report no gross income for several years, and assertions of inexplicable conduct -- such as allowing business associates to lock him out of premises he had leased. *119 Petitioner has failed to produce books and records. He has failed to provide reasonable explanations for his claimed actions. In some respects, his testimony is inconsistent with the little documentation he has provided. Petitioner leaves us to guess about the amount of any capital loss he may have suffered and also to speculate as to whether he suffered any such loss in 1990. There is authority for estimating under some circumstances, Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), but we are not authorized to resolve disputes by simply guessing. On the basis of the record in the instant case, we hold that petitioner is not entitled to a business bad debt deduction for 1990 and that he has failed to meet his burden of showing that he is entitled to a capital loss with respect to Highlander for 1990. On Schedule A of his 1990 Federal income tax return, petitioner claimed a moving expense deduction in the amount of $ 6,067.77. In the notice of deficiency, respondent disallowed this claimed deduction because petitioner had not substantiated it. Before trial, respondent conceded that petitioner is entitled to a moving expense deduction in 1990 *120 in the amount of $ 4,172 for amounts reimbursed by petitioner's employer. Petitioner contends that he is entitled to a moving expense deduction in the amount of $ 6,067.77 for expenses incurred in moving from Raleigh, North Carolina, to Hartesville, South Carolina. He testified that Carolina Power directly paid a moving company and also gave him $ 3,000 in cash for the move. Petitioner argues that he expended amounts in excess of the amount reimbursed by Carolina Power for truck rental, mileage, and meals. Petitioner did not substantiate any of his claimed moving expenses in excess of the amounts reimbursed by his employer. Taxpayers are required to substantiate claimed deductions and credits by maintaining the records needed to establish the amount of such items. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. When a taxpayer does not produce records, disallowance of claimed deductions is proper. See Roberts v. Commissioner, 62 T.C. 834, 836 (1974); Amann v. Commissioner, T.C. Memo. 1993-542, affd. without published opinion 40 F.3d 1235 (1st Cir. 1994). Petitioner failed to introduce documentary *121 evidence to show that he incurred moving expenses during 1990 in an amount greater than the reimbursement he received from his employer. His testimony about the amount of his moving expenses is unconvincing. Accordingly, we hold that petitioner is not entitled to moving expenses in excess of the amount conceded by respondent, $ 4,172. Respondent determined that petitioner was liable for the accuracy-related penalty under section 6662(a) for negligence in the amount of $ 1,433 for taxable year 1990. Section 6662(a) and (b)(1) imposes a penalty on any portion of an underpayment which is attributable to negligence or disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Petitioner has the burden of proof to show that the penalty should not be sustained by the Court. Rule 142(a); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989). Based on this record, petitioner *122 has failed to demonstrate that he was not negligent and also has failed to show that he did not disregard rules and regulations. Accordingly, we hold that petitioner is liable for the accuracy-related penalty for negligence under section 6662(a). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax year at issue, unless otherwise stated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the notice of deficiency, respondent determined that petitioner failed to report income in the amount of $ 4,172 and that petitioner was not entitled to a claimed moving expense deduction in the amount of $ 6,068. Respondent has conceded that petitioner is not required to increase his reported 1990 income by $ 4,172 and that petitioner is entitled to a moving expense deduction in the amount of $ 4,172.↩
3. Although petitioner introduced evidence of a dishonored rent check from Randy Rankins, he did not argue on brief that he was entitled to a business bad debt deduction in 1990 with respect to this check. Moreover, petitioner failed to show that he would be entitled to a bad debt deduction with respect to the dishonored check.↩