T.C. Memo. 1997-178


UNITED STATES TAX COURT


STAN PYRON AND RUTH S. PYRON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13906-95.                    Filed April 14, 1997.


<u>Lee H. Brockett</u>, for petitioners.

<u>Joan Steele Dennett</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined a deficiency of
$156,964 in petitioners' 1990 Federal income tax.

Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

After concessions,[1] the issues to be decided are as follows:

1. Whether petitioners are entitled to deduct for taxable year 1990 the portion of a loss carryforward attributable to a bad debt deduction claimed by petitioners on their amended 1989 tax return for the worthlessness of loans made by petitioner Stan Pyron to a mining company; and

2. whether petitioners are entitled to a business bad debt deduction for taxable year 1990 for the worthlessness of loans made by petitioner to a mining company.

FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91. The parties' stipulations of fact are incorporated herein by reference and are found as facts in the instant case.

At the time they filed their petition in the instant case, petitioners resided in Florence, Montana.

During 1979, petitioner Stan Pyron (petitioner) and Gerald Dalton began investing in a Chilean copper mine of a mining company called Compania Minera Esperanza (CME). During 1984 or

---

[1] In the notice of deficiency, respondent disallowed, inter alia, the bad debt deduction claimed by petitioners on their 1990 return for the worthlessness of loans in the amount of $47,938 made by petitioner Stan Pyron to Gerald Dalton, a business associate. Respondent disallowed the deduction on the grounds that the debt became worthless in taxable year 1988. At trial, petitioners' counsel conceded that "1988 is the correct year for whatever consequence flows from the Dalton activities." As 1988 is not a taxable year before us, we do not address the bad debt deduction for the loans in the amount of $47,938 made by petitioner to Mr. Dalton.

1985, petitioner and Mr. Dalton formed Compania Minera Adventura (CMA), which leased the copper mines and the plant from CME.

During 1988, in order to terminate their relationship and to pay an outstanding debt that he owed to petitioner, Mr. Dalton transferred his entire interest in CME to petitioner. Prior to Mr. Dalton's transfer of his CME interest, petitioner never requested or demanded from Mr. Dalton any payment on loans allegedly made by petitioner to Mr. Dalton.

Petitioner advanced money to CME and/or CMA and alleges that such advances were loans. Petitioner held the power of attorney for CME. For petitioner's advances to CME/CMA, notes were prepared establishing interest rates and maturity dates, but no repayment schedules were prepared and no collateral for the notes was given. On the maturity dates of the notes, petitioner did not pursue collection of either the principal of or the interest due on the notes.

During 1990, petitioner sold his interest in CME. Petitioners provided no books, records, or tax returns with respect to their interest in CME/CMA.

                           OPINION

The issue we must resolve in the instant case is whether petitioners are entitled to two bad debt deductions pursuant to section 166(a)(1) for the worthlessness of loans allegedly made by petitioner to CME/CMA. The first bad debt deduction, claimed by petitioners on their 1989 amended return, was for the

worthlessness of loans allegedly made by petitioner to CME/CMA in the amount of $633,897. As a result of their deduction of that loss, petitioners reported on their 1989 amended return a net operating loss which subsequently was carried forward to petitioners' 1990 return. Respondent argues that petitioner's advances were not bona fide debt but, rather, contributions to capital. Consequently, in the notice of deficiency, respondent disallowed the portion of the loss carryforward on petitioners' 1990 tax return attributable to the bad debt deduction in the amount of $633,897 claimed by petitioners on their 1989 amended return and recharacterized such amount as $64,085 in short-term capital loss and $460,526 in long-term capital loss.

The second bad debt deduction, claimed by petitioners on their 1990 return, was for the worthlessness of loans allegedly made by petitioner to CME/CMA in the amount of $4,010. Respondent argues that petitioner's advances were not bona fide debt but, rather, contributions to capital. Consequently, in the notice of deficiency, respondent disallowed the deduction and increased petitioners' taxable income; respondent, however, did not recharacterize the amount as a capital loss. As an alternative argument, respondent argues that the advances, if they are considered bona fide debt, are nonbusiness bad debts deductible only to the extent permitted pursuant to section 166(d).

As to both bad debt deductions, petitioners contend that they are entitled to deduct the loans as ordinary losses. Alternatively, petitioners argue that the mining companies, CME and CMA, are partnerships and that, therefore, petitioners are entitled to deduct their distributive share of the mining partnerships' losses against ordinary income for each taxable year.[2]

Section 166(a)(1) provides, in general, for the deduction of debts that become wholly worthless during a taxable year. Section 166, however, distinguishes between business bad debts and nonbusiness bad debts. Sec. 166(d); sec. 1.166-5(b), Income Tax Regs. Business bad debts may be deducted against ordinary income if they become wholly or partially worthless during the year (in the case of the latter, to the extent charged off during the taxable year as partially worthless debts). Sec. 1.166-3, Income Tax Regs. To qualify for the business bad debt deduction, the taxpayer must establish that the debt was proximately related to the conduct of the taxpayer's trade or business. United States v. Generes, 405 U.S. 93, 103 (1972); sec. 1.166-5(b), Income Tax Regs.

---

[2]   Petitioners concede that they did not claim their distributive share of the partnership losses on their personal returns for the years in which they were incurred and that the statute of limitations bars claiming this loss now. Petitioners, however, seek to adjust their basis in their investment and the notes to reflect the losses that they should have claimed.

Nonbusiness bad debts, on the other hand, may be deducted, but only if they become entirely worthless during the year claimed; they are, moreover, to be treated as short-term capital losses.  Sec. 166(d).  Generally, a nonbusiness bad debt is a debt other than a debt (1) created or acquired in the trade or business of the taxpayer or (2) the loss from the worthlessness of which is incurred in a trade or business of the taxpayer.  Sec. 166(d)(2).  The question of whether a debt is a nonbusiness bad debt is a question of fact.  Sec. 1.166-5(b), Income Tax Regs.

A deduction for a bad debt is limited to a bona fide debt.  Sec. 1.166-1(c), Income Tax Regs.  A bona fide debt is a debt that "arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money."  Id.  For purposes of section 166, a contribution to capital is not considered a debt.  In re Uneco, Inc., 532 F.2d 1204, 1207 (8th Cir. 1976); Kean v. Commissioner, 91 T.C. 575, 594 (1988); sec. 1.166-1(c), Income Tax Regs.

Deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to the deductions claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934).  Taxpayers are required to maintain records that are sufficient to enable the Commissioner to determine their correct tax liability.  See sec. 6001;

Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs. Moreover, a taxpayer who claims a deduction bears the burden of substantiating the amount and purpose of the item claimed. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.

Characterization of an advance as either a loan (i.e., debt owed to the lender) or capital contribution (i.e., equity held by the contributor in the entity) is a question of fact which must be answered by reference to all of the evidence, with the burden on the taxpayer to establish that the alleged loans were bona fide debt. Rule 142(a); Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980); Yale Avenue Corp. v. Commissioner, 58 T.C. 1062, 1073-1074 (1972). The taxpayer's assertion that an advance was a loan is not determinative of the issue of characterizing an advance as debt or equity. See In re Uneco, Inc., supra. Advances to a closely held corporation by its shareholders are subject to particular scrutiny, as "The absence of arm's-length dealing provides the opportunity to contrive a fictional debt shielding the real essence of the transaction and obtaining benefits unintended by the statute." Gilboy v. Commissioner, T.C. Memo. 1978-114.

In the instant case, the record consists of only the notice of deficiency and copies of petitioners' 1989 return, 1989 amended return, and 1990 return. Petitioners provided no books,

records, or tax returns with respect to their interest in CME/CMA. Additionally, petitioners did not provide promissory notes evidencing the alleged loans to CMA/CME or books and records reflecting petitioners' lending activities. At trial, petitioner testified that he had some books and records in Florence, Montana. Additionally, at trial, petitioners' counsel stated that, after petitioner sold his interest in CME during 1990, the new owner threw away most of the records.

We first examine whether petitioner's advances to CME/CMA were bona fide debt. The parties stipulated that, for petitioner's loans to CME/CMA, notes were prepared establishing interest rates and maturity dates. As to the first bad debt deduction for the worthlessness of advances allegedly made by petitioners to CME/CMA in the amount of $633,897, however, petitioners failed to provide the notes or any other documentary evidence and sought to substantiate the loans only through petitioner's testimony. We are not required to accept petitioner's self-serving and uncorroborated testimony, particularly where other and better evidence to prove the point in question should be available. Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964). Under the circumstances of the instant case, we do not credit petitioner's testimony where it is not corroborated by documentary or other reliable evidence. Consequently, we conclude that petitioners

did not establish that the advances to CME/CMA in the amount of $633,897 were bona fide debt.

As to the second bad debt deduction for the worthlessness of loans made by petitioners to CME/CMA in the amount of $4,010, petitioners provided no business records, checks, or receipts to corroborate petitioner's testimony that the amount was actually advanced.  It is well established that, in the absence of corroborating evidence, we are not required to accept self-serving testimony.  Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); see Jackson v. Commissioner, 19 T.C. 133, 145 (1952), affd. 207 F.2d 857 (10th Cir. 1953).  Consequently, we conclude that petitioners did not establish that the advances to CME/CMA in the amount of $4,010 were bona fide debt.

As to petitioners' remaining arguments, we conclude that petitioners have not carried their burden of proving that they are entitled to the alleged losses.  As we stated above, petitioners provided no books, records, or tax returns with respect to their interests in CME or CMA.  Additionally, petitioners did not provide promissory notes evidencing the alleged loans to CME/CMA or books and records reflecting petitioners' lending activities.

Taxpayers are required to maintain records that are sufficient to enable the Commissioner to determine their correct tax liability.  See sec. 6001; Meneguzzo v. Commissioner, supra;

sec. 1.6001-1(a), Income Tax Regs.  We conclude that petitioners did not carry their burden of substantiating the amount and purpose of either of the two bad debt deductions.  Accordingly, we hold that petitioners are not entitled to the two bad debt deductions in the amounts of $633,897 and $4,010 for the worthlessness of loans allegedly made by petitioners to CME/CMA.[3]

Under the circumstances of the instant case, we are not required to, and we generally do not, rely on petitioner's testimony to sustain petitioners' burden of proving error in respondent's determinations.  See Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Wood v. Commissioner, supra; Tokarski v. Commissioner, supra; Hradesky v. Commissioner, 65 T.C. 87 (1975).  Accordingly, we sustain respondent's determinations.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[3]     As we stated above, in addition to disallowing the portion of the loss carryforward on petitioners' 1990 tax return attributable to the first bad debt deduction in the amount of $633,897, respondent recharacterized the amount as $64,085 in short-term capital loss and $460,526 in long-term capital loss. Respondent argues that petitioners conceded on brief that $158,586 should not be included in the first bad debt deduction of $633,897.  Petitioners' argument regarding the $158,586 amount, however, was premised upon the mining companies' being treated as partnerships.  As we address the bad debt deductions on other grounds, we do not view petitioners' argument as a concession.