DAVID J. LAUSTERER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lausterer v. Commissioner
Docket No. 21854-91
United States Tax Court
T.C. Memo 1995-130; 1995 Tax Ct. Memo LEXIS 125; 69 T.C.M. (CCH) 2247; March 27, 1995, Filed *125 Decision will be entered under Rule 155. For petitioner: Stanley M. Shingles. For respondent: James C. Fee, Jr. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)
6653(b)(1)(A) 6653(b)(1)(B)
1985
$ 34,216
$ 17,108
--  --
1986
32,758
--   $ 24,569
n1
Additions to Tax Sec.
Sec. Year
6653(b)(2)
6661 1985
[1]
$ 8,554
1986
--
8,190
The issues for decision are: (1) Whether petitioner was a partner in B&D Enterprises (hereinafter referred to as B&D or B&D Enterprises) during the years at issue. We hold that he was. (2) Whether petitioner underreported his share of the gross receipts of the partnership during the years at issue. We hold that he did. (3) Whether petitioner substantiated expenses attributable to the partnership. We hold that he did to the extent stated herein. (4) Whether petitioner is liable for fraud under section *126 6653(b). [1] We hold that he is. (5) Whether petitioner is liable for additions to tax for understatement of income tax under section 6661. We hold that he is. In the notice of deficiency, respondent determined that in 1985, petitioner failed to report the gain on the sale of a capital asset and that petitioner was not entitled to an investment tax credit. Petitioner did not address these issues, either at trial or on brief; for this reason those issues are deemed to be conceded by petitioner. Rule 142(a). FINDINGS OF FACT The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Allentown, Pennsylvania. Petitioner is single and filed an individual Federal income tax return for each of the years at issue. Petitioner *127 is in the business of supplying and servicing amusement machines. In 1981, petitioner and Mr. William Muffley began purchasing amusement video games under the name B&D Enterprises, from Merit Industries, Inc., as follows: Date Purchased
Purchaser
Description Cost [1] 11/4/81 B&D Enterprises  2-8220 Amusement Games
$ 5,300
11/20/81
B&D Enterprises  2-8200 (Draw Poker)
Amusement Games  5,300
12/3/81
B&D Enterprises  3-8200 (Draw Poker)
Amusement Games  7,950
12/10/81
B&D  3-8200 Amusement Games
7,950
12/21/81
B&D Enterprises  2-8200 Amusement Games
5,300
1/5/82
B&D Enterprises  1-8400 (Black Jack)
Amusement Game  2,650
1/15/82
B&D Enterprises  2-8200 (Draw Poker)
Amusement Games  5,300
1/22/82
Dave Lausterer  B&D Enterprises  2-8200J (Draw Poker)
Amusement Games  5,300
4/1/82
B&D Enterprises  1-8210 (Draw Poker)
Amusement Game  2,650
4/29/82
B&D Enterprises  3-8210 (Draw Poker)
Amusement Games  7,950
5/21/82
B&D Enterprises  3-8210 (Draw Poker)
7,950
*128 Additionally, petitioner purchased the following amusement games for $ 7,440 pursuant to a 1985 divorce agreement: Quantity
Description
2
Donkey Kong Video  1
Ms. Pack Man Video  1
Centipede Video  3
Popeye Video  1
Donkey Kong Video  2
Donkey Kong Jr. Video  1
Ms. Pack Man  1
Atari Food fighter Video  1
United Shuffle Alley  1
United Shuffle Alley  1
United Shuffle Alley  3
3 1/2 x 7 Pool Table  1
3 x 6 Pool Table  1
4 x 8 Pool Table  Petitioner provided us with no information regarding his wife's basis (or their joint basis) in these assets prior to his purchase, although he did allocate the $ 7,440 basis among the above items. We do not indicate his allocation because we do not find it material as discussed herein. The parties do not dispute that the machines used in this type of business have a useful life of 10 years. In the notice of deficiency respondent listed amounts received from the operation of B&D amusement machines at the following locations: 1985
1986
Macungie Fire Co.
$ 18,392
$ 18,631
St. Nicholas Club
2,600
2,600
American Legion Hellertown
9,600
9,600
West End Vets
9,129
4,876
Beethoven Waldheim
4,800
4,800
Coopersburg Fire Co.
10,400
10,400
Wescosville Fire Co.
2,400
3,300
St. Andrews Jednota
[1] 8,039
[1] 6,486
Alburtis Fire Co.
[1] 5,200
[1] 5,200
Riverside Drum Corp. Assn.
[1] 436
[1] 5,065
Limeport Athletic Assn.
[1] 780
[1] 780
Cetronia Fire Co.
[1] 1,317
[1] 1,057
Fogelsville Fire Co.
[1] 2,244
[1] 972
Polish American Club
[1] 1,670
[1] 1,827
Total  77,007
75,594
*129 Additionally, B&D had machines located at and received income from the following establishments: Pioneer Fire Co., Unami Fish & Game, Allen Home Association, Emous Fire Co. #3, Trexlertown Fire Co., and Catasaque Moose. B&D stood for Bill and Dave, and petitioner and Mr. William Muffley were 50-50 partners in B&D Enterprises. Although Mr. Muffley denied he was in partnership with petitioner, the evidence is otherwise. When Ms. Norma Jean Kern [2] was a teenager she accompanied petitioner many times as he collected money from various amusement machines at several locations. After the collection trips, she observed petitioner and Mr. Muffley meet and exchange cash. From the conversations that ensued during these meetings Ms. Kern understood that the cash petitioner and Mr. Muffley were splitting was the proceeds from the amusement machines. Petitioner and Mr. Muffley *130 publicly held themselves out as partners. Individuals employed at establishments where the amusement machines were located believed that petitioner and Mr. Muffley were operating as partners. One woman was given a B&D business card with a number to call for service if a machine broke down. When she called the number, she reached an answering machine with a recording composed by Mr. Muffley. However, in a City of Allentown, Pennsylvania, "Business Registration Questionnaire" signed by petitioner on June 4, 1986, he indicated he was in the business of repairing vending machines. He indicated that he had no business name, that he was the sole owner, that he had no employees, and that the business started in Allentown on April 22, 1985. On December 2, 1993, petitioner pled guilty to two counts of making false statements on his 1985 and 1986 Federal income tax returns. In his guilty plea agreement, petitioner agreed that the calculations regarding his Federal taxable income made in conjunction with his criminal conviction were not binding in regard to a civil tax trial. OPINION As a preliminary matter, petitioner objects to the admission of a memorandum of an interview of petitioner *131 prepared by an internal revenue agent who did not testify at trial. Since we were able to arrive at our decision without consideration of this document, we will not address this issue. Whether Petitioner Was a Partner in B&D Enterprises
Petitioner asserts that the amusement machine business was operated as a partnership under the name of B&D Enterprises; thus, only one-half of the income from the business is taxable to him. Respondent determined that all of the amusement machine business income is taxable to petitioner. The following factors, none of which is conclusive, bear on the issue of whether a partnership exists: The agreement of the parties and their conduct in executing its terms; the contributions, if any, that each party has made to the business; the parties' control over income and capital and the right of each to make withdrawals; whether each party was a principal and coproprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses, or whether one party was the agent or employee of the other, receiving for his services contingent compensation in the form of a percentage of income; whether business was conducted *132 in the joint names of the parties; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were partners; and whether the parties exercised mutual control over and assumed mutual responsibilities for the business. See Luna v. Commissioner, 42 T.C. 1067, 1077-1078 (1964), and cases cited therein. Here, petitioner and Mr. Muffley did not have a written partnership agreement, and Mr. Muffley asserts that there was no verbal agreement either. However, Mr. Muffley's testimony is conflicted and not credible. Petitioner presented a credible witness, Ms. Kern, to dispute Mr. Muffley's testimony. She testified that she had observed petitioner and Mr. Muffley share the receipts from the amusement machines; this is behavior that leads us to believe that the two were engaged in a partnership. We have no documented proof of the contributions petitioner and Mr. Muffley made to the partnership. Mr. Muffley testified he made none. Petitioner testified Mr. Muffley borrowed the cash needed to acquire the first machines, and petitioner's contribution to the equipment purchases was *133 obtained from the receipts from the machines, until the machines were paid off. Because there is a conflict in testimony, we give this factor no weight. The testimony showing the parties' control over income and capital and the right to make withdrawals was that Ms. Kern saw Mr. Muffley and petitioner splitting the income; and the individuals from the various establishments indicated that typically either Mr. Muffley or petitioner, not both, would deal with a particular establishment. This indicates to us that Mr. Muffley and petitioner were in mutual control over the business. Mr. Muffley testified that he was an employee, not a partner. However, as petitioner points out this is inconsistent with the facts. Mr. Muffley received $ 100 to $ 300 per week from the amusement machine business. He testified that the amount he received did not depend on the number of hours he worked; nor did it depend on the number of service or collection calls he made; nor any other standard he could voice to us. We believe that the factor that determined Mr. Muffley's cash receipts was one he was unwilling to voice: that his proceeds were determined by his 50 percent share of the partnership's *134 profits. Petitioner, as well as three individuals from the various establishments where B&D's machines were located, testified that the name of the partnership -- "B&D Enterprises" -- stood for Bill and Dave Enterprises -- Bill Muffley and David Lausterer. Respondent objected that this was simply hearsay -- that the individuals who testified to this had simply heard this representation by word of mouth. However, that is an important part of the question: how do the parties involved represent themselves to the public? Additionally, one of the individuals indicated that she was given a business card with the name B&D Enterprises imprinted upon it. And further support was provided by Ms. Kern's testimony that B&D stood for Bill and Dave Enterprises -- Bill Muffley and David Lausterer. We believe that B&D does indeed stand for Bill and Dave Enterprises -- Bill Muffley and David Lausterer acting as partners. Petitioner did not file Federal partnership returns, nor did he represent himself as a partner in his City of Allentown business registration questionnaire. However, we give the questionnaire no weight because, additionally, petitioner represented that he had no employees. *135 The testimony from all parties overwhelmingly proves that the two men were working together in some capacity -- either as partners or as employer/employee -- but there is no relationship reflected in the questionnaire. Finally, Mr. Muffley and petitioner did exercise mutual control over and assumed mutual responsibilities for the business as indicated in the above discussion. For all of the above reasons, we hold that B&D Enterprises was indeed a partnership operated by Mr. William Muffley and Mr. David Lausterer. We further hold that it was a 50/50 partnership, with 50 percent of the profits, losses, and capital attributable to each partner. Whether Petitioner Underreported Income
A taxpayer is required to maintain records sufficient to show whether he or she is liable for Federal income taxes. Sec. 6001. Gross income means all income from whatever source derived. Sec. 61. If a taxpayer fails to keep adequate records, the Commissioner is permitted to reconstruct the taxpayer's income by any reasonable method. Davies v. Commissioner, T.C. Memo. 1981-438, affd. sub nom. Keogh v. Commissioner, 713 F.2d 496 (9th Cir. 1983). *136 The taxpayer bears the burden of proving that the Commissioner's determinations in the notices of deficiency are erroneous. Rule 142(a). Petitioner did not maintain records regarding the amounts he collected from the amusement machines; nor did he maintain records regarding the amounts his partner collected and remitted to him. At trial, petitioner challenged some of the individuals from the various establishments who were in charge of collecting money from B&D's machines, asking them to recall without notes the information they each had provided respondent in 1990. Petitioner contends that since the individuals' memories at the time of trial were vague, we must hold that petitioner had no income from the various establishments. We disagree. Respondent's revenue agent testified that she reconstructed B&D's income by interviewing each of the responsible individuals at their respective establishments. She asked them to use their books and records and memories to assist her in reconstructing B&D's income. Petitioner himself admitted that he received money from most of the establishments in question. That he also received money from other establishments was attested to by individuals *137 from those establishments or by Mr. Muffley. Additionally, petitioner admitted to receiving income from six establishments during the years in question from which respondent did not reconstruct income. We are confident that petitioner did receive income from those establishments. If respondent did by some chance overstate the amounts received from the establishments listed in the notice of deficiency, we are confident that those overstatements are more than offset by the understatement created by the omitted establishments. For the above reasons, we hold that petitioner has understated B&D's gross income to the extent determined in the notice of deficiency. Thus, we find that petitioner has gross income from the partnership to the extent of one half of B&D's gross receipts. Substantiation of Expenses
Petitioner provided copies of invoices that show that B&D purchased five machines in 1981 and six machines in 1982. Petitioner also provided documentation to show that upon his divorce in 1985, he paid his wife $ 7,440 for 20 game machines. In the notice of deficiency, respondent argues that petitioner is not entitled to business deductions because of the lack of documentation. *138 On brief, respondent argues that petitioner has not addressed the substantiation issue "at trial or on brief"; therefore petitioner, who bears the burden of proof on this issue, should not be able to deduct any of the business expenses he claimed. We disagree. In general, section 162 allows a deduction for ordinary and necessary business expenses. The term "ordinary" means that the expense must have a reasonably proximate relationship to the operation of the taxpayer's trade or business. Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 660 (1962). Section 167 provides that for property used in a trade or business a depreciation deduction is allowed for exhaustion and wear and tear. Section 168 provides an accelerated cost recovery system for property placed in service after December 31, 1980. Sec. 168(e)(1). For the assets that were purchased by petitioner from his wife during their divorce proceeding we must look to section 1041. Section 1041 provides that if a transfer occurs within 1 year after the date of the divorce or is related to the cessation of the marriage, the property must be treated as if the asset were acquired by gift *139 and the basis of the property to the spouse receiving the property is the same as the adjusted basis in the hands of the spouse who is the transferor of the property. Sec. 1041(b). Petitioner has supplied us with no information regarding his former wife's basis in the machines he purchased from her. Petitioner has the burden of proof on this issue. Rule 142(a). Since petitioner has provided us with no proof of the basis of the machines, he is not entitled to a depreciation deduction. For the assets that were purchased in 1981 and 1982, petitioner supplied adequate documentation to show that B&D purchased the machines; the price, the date, and the vendor are included in the documentation. Additionally, petitioner, petitioner's partner, and a number of individuals at the establishments where the machines were placed testified to the physical existence of the machines. In 1981 ACRS (accelerated cost recovery system) depreciation was enacted. Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172. Using the ACRS parameters, the machines have a 5 year recovery period, sec. 168(c)(2)(B); [3] therefore, the assets purchased in 1981 would be fully depreciated by the end of *140 1985; and the assets purchased in 1982 would be fully depreciated by the end of 1986. We hold that B&D is entitled to depreciation deductions on the amusement machines acquired by the partnership in 1981 and 1982, as indicated above. Thus, we find that petitioner is entitled to one-half of the depreciation deduction to arrive at his portion of net partnership income. Additions to Tax -- Fraud
Respondent determined that petitioner is liable for additions to tax for fraud under section 6653(b)(1) and (2) for 1985, and section 6653(b)(1)(A) and (B) for 1986. For 1985, section 6653(b)(1) provides that if any part of any underpayment of tax is due to fraud, the addition to tax under this section shall be an amount equal to 50 percent of the underpayment. Moreover, section 6653(b)(2) adds to the tax an amount equal to 50 percent of the interest due on the portion of the underpayment attributable *141 to fraud. Pursuant to the terms of section 6653(b), the fraud addition to tax imposed by section 6653(b)(1) attaches to the entire underpayment even if only a portion of it is actually attributable to fraud. Mensik v. Commissioner, 328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Breman v. Commissioner, 66 T.C. 61 (1976). For 1986, section 6653(b)(1)(A) provides for an addition to tax in an amount equal to 75 percent of the portion of the underpayment that is attributable to fraud. Moreover, section 6653(b)(1)(B) adds to the tax an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to fraud. For purposes of those provisions, section 6653(b)(2) provides that if the Secretary establishes any portion of an underpayment is due to fraud, the entire underpayment is treated as fraudulent, unless the taxpayer proves some portion of the underpayment is not due to fraud. The existence of fraud is a question of fact to be determined on the basis of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), *142 affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). The principal issue in ascertaining whether fraud is present is whether there has been an intentional wrongdoing on the part of the taxpayer with the specific intent to evade a tax known or believed to be properly owing. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The burden of proof with respect to the fraud issue is upon the Commissioner, to prove, by clear and convincing evidence, that some part of the underpayment of tax was due to fraud with an intent to evade tax. Sec. 7454(a); Rule 142(b); Imburgia v. Commissioner, 22 T.C. 1002 (1954). Where fraud is determined for more than 1 year, the Commissioner's burden applies individually to each year. Barbuto v. Commissioner, T.C. Memo. 1991-342 (citing Estate of Stein v. Commissioner, 25 T.C. 940, 959-963 (1956), affd. sub nom. Levine v. Commissioner, 250 F.2d 798 (2d Cir. 1958)). *143 To satisfy her burden of proof, the Commissioner must show two things: (1) An underpayment exists, and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). The Commissioner may prove an underpayment by proving a likely source of the unreported income, Holland v. United States, 348 U.S. 121, 137-138 (1954), or, where the taxpayer alleges a nontaxable source, by disproving the specific nontaxable source so alleged, United States v. Massei, 355 U.S. 595 (1958). The first element requires the Commissioner to establish the existence of an underpayment of tax. Section 6653(c) defines underpayment in essentially the same manner as a "deficiency" to mean the amount by which the tax imposed exceeds the amount of tax shown by the taxpayer on his return. Sec. 6211. To prove an underpayment, the Commissioner cannot satisfy her burden by relying solely on the taxpayer's failure *144 to discharge his burden of proving error in her determinations of the deficiencies. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). Respondent has proven petitioner received income from his amusement machine business that he did not report on his Federal income tax returns through the cogent testimony of the individuals operating the various establishments where the B&D amusement machines were located. Therefore, we find that here, respondent has discharged her burden of proof regarding the first element. The second element requires the Commissioner to prove fraudulent intent on the part of the taxpayer. Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106. Courts have developed various factors or "badges" that tend to establish *145 fraud. Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). These include: (1) A pattern of understatement of income; (2) inadequate records; (3) concealment of assets; (4) income from illegal activities; (5) attempting to conceal illegal activities; (6) implausible or inconsistent explanations of behavior; and (7) dealing in cash. Bradford v. Commissioner, supra at 308; McGee v. Commissioner, 61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Although fraud cannot be inferred from the mere understatement of income, consistent and substantial underreporting is evidence of fraud. Webb v. Commissioner, 394 F.2d 366, 379 (5th Cir. 1968), affg. T.C. Memo. 1966-81. Repeated understatements in successive years, when coupled with other circumstances showing an intent to conceal or misstate taxable income, present a basis on which we may properly infer fraud. Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148; *146 Anderson v. Commissioner, 250 F.2d 242, 250 (5th Cir. 1957), affg. on this issue T.C. Memo. 1956-178. Badges of fraud are present in this case. Petitioner understated his income for 5 years. [4] He kept incomplete and inaccurate records, shown by the fact that the partnership income had to be reconstructed through information relayed by individuals employed by the establishments where B&D's amusement machines were located. One of the methods he used to conceal his income was dealing in cash. And finally, petitioner pled guilty to making false statements on his 1985 and 1986 Federal income tax returns. The guilty plea was specifically related to the misstatement of income regarding the amusement machine business. Based on these badges of fraud, we find that respondent has proven by clear and convincing evidence that petitioner intended to evade taxes. *147 Because petitioner willfully and knowingly intended to evade the payment of tax for all the years in issue, we sustain respondent's determinations as to the addition to tax for fraud under section 6653(b)(1) and (2) for 1985, and section 6653(b)(1)(A) and (B) for 1986. Furthermore, we find that the full amount of the underpayment for each year is attributable to petitioner's fraud. Sec. 6653(b)(2) for 1985; sec. 6653(b)(1)(B) for 1986. Additions to Tax -- Substantial Understatement
The remaining issue is whether petitioner is liable for the addition to tax pursuant to section 6661. This section provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 [5] percent of any underpayment attributable to such understatement. Sec. 6661(a). The taxpayer bears the burden of proving that the Commissioner's determination as to the addition to tax under section 6661(a) is erroneous. Rule 142(a). *148 A substantial understatement of income tax exists in a year if the tax understatement exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1). An understatement is the difference between the amount required to be shown on the return and the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501 (1989); Woods v. Commissioner, 91 T.C. 88 (1988). The amount of the understatement on which the addition to tax is based will be reduced by that portion of the understatement that is attributable to either (1) a position adopted by the taxpayer for which substantial authority exists, or (2) any item with respect to which the taxpayer has made adequate disclosure of the relevant facts in the tax return or any statement attached thereto. Sec. 6661(b)(2)(B). In the case at hand, petitioner failed to present any substantial authority for his positions, as reflected in our prior findings. He did not adequately disclose any facts pertaining to the understated gross income on any of the tax returns as filed, or on any statements attached *149 to such returns. Therefore, if a substantial understatement exists for the 2 years in question, after petitioner's tax liability is recomputed based on the foregoing under Rule 155, we hold that petitioner is liable for the section 6661 addition to tax for that year. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. 50 percent of the interest due on the portion of the underpayment that is attributable to fraud.↩
1. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
1. The invoice reads: November 4, 19. The last two digits in the year are illegible. Due to the fact that the remainder of the invoices are in chronological order, we find that this date is 1981.↩
1. Petitioner did not challenge these amounts either at trial or on brief.↩
2. Ms. Kern is the daughter of a woman to whom petitioner was once engaged. Petitioner did not marry Ms. Kern's mother, but they are still friends.↩
3. Since the assets were placed in service in 1981 and 1982, sec. 168(c)(2)(B)↩ is referred to as of 1981 and 1982.
4. Petitioner testified that he did not file Federal income tax returns for the years 1982, 1983, and 1984.↩
5. For additions assessed after Oct. 21, 1986, even though the understatement was for a year prior to that date, the rate is 25 percent. See Pallottini v. Commissioner, 90 T.C. 498↩ (1988).